## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NATURAL RESOURCES DEFENSE COUNCIL, CENTER FOR BIOLOGICAL DIVERSITY, HUMAN SOCIETY INTERNATIONAL, and HUMAN SOCIETY OF THE UNITED STATES,<br><br>    Plaintiffs,<br><br>  v.<br><br>RYAN ZINKE, in his official capacity as Secretary of the Interior, DEPARTMENT OF THE INTERIOR, U.S. FISH AND WILDLIFE SERVICE, JIM KURTH, in his official capacity as Acting Director of the U.S. Fish and Wildlife Service, and GREG SHEEHAN, in his official capacity as Principal Deputy Director or the U.S. Fish and Wildlife Service,<br><br>    Defendants. | Case No. 18-cv-6903 (AJN)<br><br><br>ORAL ARGUMENT REQUESTED |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**


GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2663
E-mail: jennifer.jude@usdoj.gov


JENNIFER JUDE
Assistant United States Attorney
– Of Counsel –

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................... 1

BACKGROUND ....................................................................................................... 3

    I. The Federal Advisory Committee Act ......................................................... 3

    II. The International Wildlife Conservation Council .......................................... 4

    III. Plaintiffs' Lawsuit ..................................................................................... 6

ARGUMENT ........................................................................................................... 7

    I. Legal Standards ......................................................................................... 7

    II. Plaintiffs' Claims Must Be Dismissed Because Plaintiffs Lack Standing ................... 8

        A. Plaintiffs Do Not Have Organizational Standing ................................ 9

            1. Plaintiffs Have Not Suffered An Informational Injury ..................... 10

            2. Plaintiffs Have Not Suffered Any Other Injury-in-Fact ..................... 12

        B. Plaintiffs Do Not Have Associational Standing .............................. 14

            1. Plaintiffs Do Not Plead That Any One of Their Members Has
               Suffered an Injury-in-Fact .............................................................. 14

            2. Plaintiffs Do Not Plead Facts That Could Satisfy the Causation
               or Redressability Elements of Associational Standing ............................. 17

    III. Counts Three and Four Must Be Dismissed Because They Are Nonjusticiable ........ 21

        A. Matters Committed to Agency Discretion by Law Are Not Reviewable ........ 22

        B. Count Three Must Be Dismissed Because FACA's Fair Balance
           Provision Is Nonjusticiable ............................................................. 25

        C. Count Four Must Be Dismissed Because FACA's Inappropriate
           Influence Provision Is Nonjusticiable ............................................... 27

    IV. Counts One and Two Should Be Dismissed for Failure to State a Claim ................. 29

        A. Count One Must Be Dismissed Because Plaintiffs Plead Facts Showing
           Defendants Complied with the Provisions Governing the Establishment
           of the IWCC ............................................................................... 30

        B. Count Two Must Be Dismissed Because Plaintiffs Plead Facts Showing
           the IWCC Has Complied with the Applicable Rules Governing Its
           Meetings and Records .................................................................. 31

            1. Defendants Have Complied with Their Obligations Regarding
               IWCC Meetings .......................................................................... 32

            2. Defendants Have Complied with Their Obligations Regarding
               IWCC Records ............................................................................ 34

CONCLUSION ...................................................................................................... 35

# TABLE OF AUTHORITIES

**Cases**                                                                            **Page(s)**

*Alexander v. Sandoval,*
    532 U.S. 275 (2001) ............................................................................................... 6

*Ashcroft v. Iqbal,*
    556 U.S 662 (2009). ................................................................................................ 8

*Ass'n of Am. Physicians & Surgeons, Inc. v. Clinton,*
    997 F.2d 898 (D.C. Cir. 1993) ........................................................................... 24

*Bano v. Union Carbide Corp.,*
    361 F.3d 696 (2d Cir. 2004) ............................................................................... 14

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ......................................................................................... 7, 8

*Brass v. Am. Film Techs., Inc.,*
    987 F.2d 142 (2d Cir. 1993) .................................................................................. 8

*Califano v. Sanders,*
    430 U.S. 99 (1977) ............................................................................................... 22

*Cantor Fitzgerald Inc. v. Lutnick,*
    313 F.3d 704 (2d Cir. 2002) .................................................................................. 8

*Cargill v. United States,*
    173 F.3d 323 (5th Cir. 1999) ............................................................................... 33

*Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay,*
    868 F.3d 104 (2d Cir. 2017) .................................................................................. 9

*Citizens to Pres. Overton Park, Inc. v. Volpe,*
    401 U.S. 402 (1971) ............................................................................................. 22

*Clapper v. Amnesty Int'l USA,*
    568 U.S. 398 (2013) ................................................................................... 8, 14, 20

*Claybrook v. Slater,*
    111 F.3d 904 (D.C. Cir. 1997) ..................................................................... 23, 24

*Colorado Environmental Coalition v. Wenker*,
    353 F.3d 1221 (10th Cir. 2004) ............................................................................ 28

*Ctr. for Auto Safety v. Dole*,
    846 F.2d 1532 (D.C. Cir. 1988) ........................................................................... 23

*Ctr. for Law & Educ. v. Dep't of Educ.*,
    396 F.3d 1152 (D.C. Cir. 2005) ........................................................... 12, 13, 17, 18

*Ctr. for Policy Analysis on Trade & Health v. Office of the U.S. Trade Representative*,
    540 F.3d 940 (9th Cir. 2008) .............................................................................. 24, 26

*Cummock v. Gore*,
    180 F.3d 282 (D.C. Cir. 1999) ................................................................................ 3

*Doe v. Vill. of Mamaroneck*,
    462 F. Supp. 2d 520 (S.D.N.Y. 2006) .................................................................. 13

*Doe v. Shalala*,
    862 F. Supp 1421 (E.D. Va. 1994) ..................................................... 21, 24, 25, 27

*Ecological Rights Found. v. Pacific Lumber Co.*,
    230 F.3d 1141 (9th Cir. 2000) .............................................................................. 16

*Elec. Privacy Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*,
    878 F.3d 371 (D.C. Cir. 2017) ......................................................................... 10, 13

*Elec. Privacy Info. Ctr. v. U.S. Dep't of Educ.*,
    48 F. Supp. 3d 1 (D.D.C. 2014) ........................................................................... 13

*Fertilizer Inst. v. U.S. EPA*,
    938 F. Supp. 52 (D.D.C. 1996) ..................................................................... passim

*Food Chem. News v. HHS*,
    980 F.2d 1468 (D.C. Cir. 1992) ........................................................................... 35

*Friends of Animals v. Jewell*,
    828 F.3d 989 (D.C. Cir. 2016) ............................................................................. 10

*Havens Realty Corp. v. Coleman*,
    455 U.S. 363 (1982) ............................................................................................. 12

*Heckler v. Chaney*,
  470 U.S. 821 (1985) ............................................................................................. 22, 23

*In re CV Therapeutics, Inc.*,
  2004 WL 1753251 (N.D. Cal. Aug. 5, 2004) ........................................................... 6

*In re Frito-Lay N. Am., Inc. All Natural Litig.*,
  2013 WL 4647512 (E.D.N.Y. Aug. 29, 2013) .......................................................... 6

*Interstate Commerce Comm'n v. Bhd. of Locomotive Eng'rs*,
  482 U.S. 270 (1987) .................................................................................................. 23

*Knowles v. U.S. Coast Guard*,
  924 F. Supp. 593 (S.D.N.Y. 1996) ........................................................................... 16

*Friends of Earth, Inc. v. Laidlaw Envtl. Services*,
  528 U.S 167 (2000). ..................................................................................... 10, 15, 16

*Lincoln v. Vigil*,
  508 U.S 182 (1993). .................................................................................................. 23

*Lorillard, Inc. v. U.S. Food & Drug Admin.*,
  56 F. Supp. 3d 37 (D.D.C. 2014) ............................................................................. 24

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ........................................................................................... passim

*Lunney v. United States*,
  319 F.3d 550 (2d Cir. 2003) ............................................................................... 22, 25

*Makarova v. United States*,
  201 F.3d 110 (2d Cir. 2000) ...................................................................................... 7

*Mancuso v. Consol. Edison Co. of N.Y.*,
  130 F. Supp. 2d 584 (S.D.N.Y. 2001) ...................................................................... 16

*McCrory v. Adm'r of FEMA*,
  22 F. Supp. 3d 279 (S.D.N.Y. 2014) ........................................................................ 17

*Metcalf v. Nat'l Petroleum Council*,
  553 F.2d 176 (D.C. Cir. 1977) ........................................................................... 20, 26

*N.Y. Civil Liberties Union v. N.Y. City Transit Auth.*,
    684 F.3d 286 (2d Cir. 2012) ............................................................................ 9

*Nat'l Fed'n of Fed. Emps. v. United States*,
    905 F.2d 400 (D.C. Cir. 1990) ........................................................................ 23

*Nat'l Mining Ass'n v. Zinke*,
    877 F.3d 845 (9th Cir. 2017) .......................................................................... 34

*Nat'l Parks Conservation Ass'n v. U.S. Dep't of Interior*,
    2012 WL 3589804 (M.D. Fla. Apr. 12, 2012) ................................................ 26

*Norton v. Larney*,
    266 U.S. 511 (1925) .......................................................................................... 7

*Natural Res. Defense Council, Inc. v. Fed. Hous. Fin. Agency*,
    815 F. Supp. 2d 630 (S.D.N.Y. 2011) ....................................................... 17, 18

*Padula v. Webster*,
    822 F.2d 97 (D.C. Cir. 1987) ......................................................................... 23

*Physicians Comm. for Responsible Med. v. Vilsack*,
    2016 WL 5930585 (N.D. Cal. Oct. 12, 2016) ........................................... 24, 28

*Physicians Educ. Network, Inc. v. Dep't of Health, Education & Welfare*,
    653 F.2d 621 (D.C. Cir. 1981) ....................................................................... 21

*Prisology, Inc. v. Fed. Bureau of Prisons*,
    852 F.3d 1114 (D.C. Cir. 2017) ...................................................................... 11

*Pub. Citizen v. HHS*,
    795 F. Supp. 1212 (D.D.C. 1992) ....................................................... 20, 24, 27

*Pub. Citizen v. Nat'l Advisory Comm. on Microbiological Criteria for Foods*,
    886 F.2d 419 (D.C. Cir. 1989) ................................................................. passim

*Pub. Citizen v. U.S. Dep't of Justice*,
    491 U.S. 440 (1989) .................................................................................... 3, 11

*R.J. Reynolds Tobacco Co. v. FDA*,
    810 F.3d 827 (D.C. Cir. 2016) ............................................................ 17, 19, 24

*Renne v. Geary,*
  501 U.S. 312 (1991) ................................................................. 7

*Residents & Families United to Save Our Adult Homes v. Zucker,*
  2018 WL 1175152 (E.D.N.Y. Mar. 5, 2018) ............................ 14

*Robinson v. Overseas Mil. Sales Corp.,*
  21 F.3d 502 (2d Cir. 1994) ...................................................... 7

*San Luis & Delta-Mendota Water Auth. v. Haugrud,*
  848 F.3d 1216 (9th Cir. 2017) ................................................ 20

*Sanchez v. Pena,*
  17 F. Supp. 2d 1235 (D.N.M. 1998) ....................................... 26

*Scheuer v. Rhodes,*
  416 U.S. 232 (1974) ................................................................. 7

*Shipping Fin. Servs. Corp. v. Drakos,*
  140 F.3d 129 (2d Cir. 1998) .................................................... 7

*Spokeo, Inc. v. Robins,*
  136 S. Ct. 1540 (2016) ........................................................ 8, 14

*Steenholdt v. FAA,*
  314 F.3d 633 (D.C. Cir. 2003) ............................................... 25

*Summers v. Earth Island Inst.,*
  555 U.S. 488 (2009) ..................................................... passim

*Swanson Group Mfg. LLC v. Jewell,*
  790 F.3d 235 (D.C. Cir. 2015) ............................................... 17

*Taylor v. Bernanke,*
  2013 WL 4811222 (E.D.N.Y. Sept. 9, 2013) ......................... 13

*Citizens for Responsibility and Ethics v. Trump,*
  276 F. Supp. 3d 174 (S.D.N.Y. 2017) .................................... 12

*Town of Babylon v. Fed. House Fin. Agency,*
  699 F.3d 221 (2d Cir. 2012) ................................................... 17

*United States v. Vazquez,*
    145 F.3d 74 (2d Cir. 1998) ................................................................................. 7

*Warth v. Seldin,*
    422 U.S. 490 (1975) ............................................................................................ 8

*Webster v. Doe,*
    486 U.S. 592 (1988) .................................................................................... 22, 23

*WildEarth Guardians v. U.S. Dep't of Agric.,*
    795 F.3d 1148 (9th Cir. 2015) ........................................................................ 15

*Wilderness Soc'y, Inc. v. Rey,*
    622 F.3d 1256 (9th Cir. 2010) ........................................................................ 17

## **Statutes**

5 U.S.C. App. II § 1-15 ............................................................................... passim

5 U.S.C. § 552 ..................................................................................................... 4

5 U.S.C. § 553(b)(3)(A) .................................................................................... 23

5 U.S.C. § 701(a) ................................................................................... 22, 23, 25

5 U.S.C. § 702 ................................................................................................... 22

5 U.S.C. § 706 ................................................................................................... 22

44 U.S.C. § 1507 ................................................................................................. 6

## **Regulations**

41 C.F.R. § 102-3.130(a) ................................................................................... 25

41 C.F.R. § 102-3.150 ....................................................................................... 32

41 C.F.R. § 102-3.30 ......................................................................................... 31

41 C.F.R. § 102-3.35 ............................................................................... 3, 33, 35

43 C.F.R. § 1784.0-1 ......................................................................................... 29

43 C.F.R. § 1784.0-5(e) ..................................................................................... 29

43 C.F.R. § 1784.2-2(a) ................................................................................................... 29

**<u>Other Authorities</u>**

75 Fed. Reg. 6,056 ........................................................................................................... 30

78 Fed. Reg. 45,556 ......................................................................................................... 31

82 Fed. Reg. 51,857 .............................................................................................. 4, 29, 30

83 Fed. Reg. 9,021 ............................................................................................... 5, 32, 33

83 Fed. Reg. 25,684 ................................................................................................... 5, 32

83 Fed. Reg. 45,275 ................................................................................................... 5, 32

Defendants Ryan Zinke, Secretary of the Interior (the "Secretary"); the U.S. Department of the Interior ("Interior" or "DOI"); the U.S. Fish and Wildlife Service ("FWS"); Jim Kurth, Acting Director and Deputy Director for Operations of FWS; and Greg Sheehan, Principal Deputy Director of FWS, all sued in their official capacities (collectively, "Defendants"), respectfully submit this memorandum of law in support of their motion to dismiss the complaint ("Compl.," Dkt. No. 1) of Natural Resources Defense Council, Center for Biological Diversity, Humane Society International, and Humane Society of the United States (collectively, "Plaintiffs"), pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Plaintiffs, four environmental and animal welfare advocacy organizations, seek to enjoin the International Wildlife Conservation Council (the "IWCC" or the "Council"), a federal advisory committee establish in late 2017 to advise Interior on issues related to international hunting, from continuing to meet or make recommendations to the government about federal wildlife policy.  According to Plaintiffs, the IWCC has violated several provisions of the Federal Advisory Committee Act ("FACA"), 5 U.S.C. App. II §§ 1-15, a 1972 statute that sets procedures for the executive branch's use of advisory committees.  Plaintiffs allege that the IWCC is "illegally-chartered" because the Secretary has not provided a detailed explanation for why it is necessary and why its objectives are in the public interest.  Plaintiffs also allege both that the IWCC is unfairly balanced because its members are primarily hunting advocates and that the ethics provision contained in its charter is not robust enough to prevent special interests from inappropriately influencing the Council's work.  Finally, while acknowledging that the IWCC has held multiple public meetings, each of which has been announced weeks in advance in the

1

Federal Register, and has made its agenda, minutes, presentations, and other materials publicly available, Plaintiffs allege that the IWCC is attempting to operate in secret.

Plaintiffs' suit should be dismissed for several reasons.  First, Plaintiffs do not have standing to bring any of their claims, either on behalf of their members or themselves.  Plaintiffs lack standing in their own right because Defendants' actions have not caused any setback to their organizational activities (as opposed to their abstract social interests).  Nor have Plaintiffs suffered a cognizable "informational injury" where they have not specifically requested and been denied access to IWCC information.  Plaintiffs also lack standing to sue on behalf of their members.  They have not pleaded facts showing that any one of their members has a concrete interest in observing wildlife abroad that is imminently threatened by Defendants' alleged FACA violations.  And even if they had, such an injury would not be fairly traceable to the alleged FACA violations, which may or may not affect the recommendations made by the IWCC, which in turn may or may not be implemented by Interior, and which, if implemented, may or may not affect the populations of certain species abroad.  Nor would an order from this Court be likely to redress Plaintiffs' members' alleged environmental injuries given this highly speculative chain of events.  As such, Article III bars Plaintiffs from litigating in court what is in essence a policy disagreement with Interior.

Second, two of Plaintiffs' claims—their challenges to the composition of the Council and to its ethics provision—ask this Court to apply provisions of FACA that contain no meaningful standards against which to judge Defendants' actions.  Numerous courts have held that these provisions of FACA are non-justiciable because in the absence of any "law" to apply, courts have no choice but to arbitrarily substitute their policy judgments for that of agencies, a task

inappropriate for the judiciary.  The Court should follow these courts' holdings here and dismiss both of these claims.

Finally, Plaintiffs' challenges to the IWCC's establishment and to the manner in which the IWCC has handled access to meetings and records fail to state a claim.  The IWCC has consistently complied with FACA and all applicable regulations.  Plaintiffs' arguments to the contrary seek to enforce rules that do not apply to the IWCC.  Such claims fail as a matter of law.

Accordingly, the complaint should be dismissed in its entirety.

## BACKGROUND

### I.   The Federal Advisory Committee Act

Congress enacted FACA to reduce the growing cost of unnecessary blue-ribbon commissions, advisory panels, and honorary boards set up by the government to advise the President and federal agencies.  *See Pub. Citizen v. U.S. Dep't of Justice*, 491 U.S. 440, 446 (1989) (citing 5 U.S.C. App. II § 2(b)).  FACA applies to any "advisory committee," which is defined as "any committee, board, commission, council, conference, panel, task force, or other similar group, or any subcommittee or other subgroup thereof" that is "established" by statute, or "established or utilized" by the President or by one or more federal agencies, "in the interest of obtaining advice or recommendations for the President or one or more agencies or officers of the Federal Government."  *Id.* § 3(2).  The General Services Administration ("GSA"), the federal agency "charge[d] . . . with prescribing regulatory guidelines and management controls applicable to advisory committees," *Cummock v. Gore*, 180 F.3d 282, 285 (D.C. Cir. 1999), has clarified that "the requirements of the Act . . . do not apply to subcommittees of advisory committees that report to a parent advisory committee and not directly to a Federal officer or agency."  41 C.F.R. § 102-3.35(a).

FACA imposes an array of procedural requirements on the creation and operation of advisory committees.  An advisory committee cannot meet or take any action until a charter is filed with the head of the agency to which it reports and with the House and Senate committees having legislative jurisdiction over the agency.  5 U.S.C. App. II § 9(c).  Every advisory committee must give advance notice in the Federal Register of its meetings, *id.* § 10(a)(2), generally hold all meetings open to the public, *id.* §§ 10(a)(1), (d), keep detailed minutes of each meeting and copies of all reports received, issued, or approved by the advisory committee, *id.* § 10(c), and make its records available to the public for inspection and copying at a single location in accordance with the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, 5 U.S.C. App. II § 10(b).  Advisory committees also must be "fairly balanced in terms of the points of view represented and the functions to be performed," *id.* § 5(b)(2), and the constituting agency must put in place "appropriate provisions to assure that the advice and recommendations of the advisory committee will not be inappropriately influenced by the appointing authority or by any special interest, but will instead be the result of the advisory committee's independent judgment," *id.* § 5(b)(3).

## II.    The International Wildlife Conservation Council

Interior announced the establishment of the IWCC on November 8, 2017, via a notice in the Federal Register.  Compl. ¶ 67; 82 Fed. Reg. 51,857 (Nov. 8, 2017).  Pursuant to its charter,[1] which was filed on December 21, 2017, the objective of the IWCC is to "provide advice and recommendations to the Federal Government, through the Secretary . . . focused on increased public awareness domestically regarding the conservation, wildlife law enforcement, and

---

[1] The IWCC's charter (the "Charter"), which is incorporated by reference into the complaint, *see* Compl. ¶¶ 68-69, 70, 71, is available online.  U.S. Department of the Interior, U.S. Fish and Wildlife Service, International Wildlife Conservation Council Charter, https://www.fws.gov/iwcc/pdf/international-wildlife-conservation-council-charter.pdf (last visited Nov. 6, 2018).

economic benefits that result from United States citizens traveling to foreign nations to engage in hunting" and to "advise the Secretary on the benefits international hunting has on foreign wildlife and habitat conservation, anti-poaching and illegal wildlife trafficking programs, and other ways in which international hunting benefits human populations in these areas."  Charter ¶ 3.  The Charter provides that the IWCC "will consist of no more than 18 discretionary and 4 ex officio members," *id.* ¶ 12, "will meet approximately two times annually," *id.* ¶ 9, and will terminate two years after the filing of the Charter unless it is renewed in accordance with FACA, *id.* ¶ 11.

The Charter contains an ethics provision that states that "[n]o Council or subcommittee member will participate in any Council or subcommittee deliberations or votes relating to a specific party matter before the Department or its bureaus and offices including a lease, license, permit, contract, grant, claim, agreement, or litigation in which the member or the entity the member represents has a direct financial interest."  *Id.* ¶ 13.  The Charter allows the formation of subcommittees "to compile information or conduct research" but provides that they "must act only under the direction of [a designated agency official] and must report their recommendations to the full Council for consideration."[2]  *Id.* ¶ 14.  Finally, the Charter states that Council records must be available for public inspection and copying, subject to FOIA.  *Id.* ¶ 15.

To date, the IWCC has held three public meetings—on March 16, June 19, and September 26-27, 2018, each of which was announced in advance by notice in the Federal Register.  *See* 83 Fed. Reg. 9,021 (Mar. 2, 2018); 83 Fed. Reg. 25,684 (June 4, 2018); 83 Fed. Reg. 45,275 (Sept. 6, 2018); *see also* Compl. ¶¶ 79, 84-85 (discussing the two IWCC meetings that had taken place as of date of the complaint).  The Court may take judicial notice of the

---

[2] At its first meeting in March 2018, the IWCC established three subcommittees.  Compl. ¶ 96.

contents of these notices.[3]  *See* 44 U.S.C. § 1507 ("The contents of the Federal Register shall be

judicially noticed . . . ."); *In re Frito-Lay N. Am., Inc. All Natural Litig.*, 12-MD-2413, 2013 WL

4647512, at *4 (E.D.N.Y. Aug. 29, 2013) (taking judicial notice of "contents of the Federal

Register" and "agency letters, policy and guidance documents, websites, and other agency data

made available to the public").  Agendas and materials related to each of the IWCC's meetings

are available on the Council's website, a fact of which the Court also may take judicial notice.[4]

*See In re Frito-Lay*, 2013 WL 4647512, at *4; *In re CV Therapeutics, Inc.*, No. C 03-03709 SI,

2004 WL 1753251, at *12 (N.D. Cal. Aug. 5, 2004) (taking judicial notice of advisory

committee minutes for purposes of motion to dismiss).

## III.    Plaintiffs' Lawsuit

Plaintiffs are four non-profit organizations that work on issues related to wildlife

conservation.  Compl. ¶¶ 18-23.  Their complaint alleges four violations of FACA, all brought

pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 706.[5]  *See* Compl. ¶¶ 99-112.

Count One alleges that Defendants failed to make certain required findings in establishing the

IWCC.  *Id.* ¶¶ 99-102.  Count Two alleges that Defendants have not provided the required level

of public access to meetings and records.  *Id.* ¶¶ 103-05.  Count Three alleges that the IWCC is

not fairly balanced in its functions and viewpoints.  *Id.* ¶¶ 106-09.  Count Four alleges that

Defendants have not taken sufficient steps to prevent the IWCC from being inappropriately

influenced by special interests.  *Id.* ¶¶ 110-12.

---

[3] The first two notices are also incorporated into the complaint by reference.  *See* Compl. ¶¶ 67, 71, 87.

[4] *See* IWCC, Public Meeting Materials, https://www.fws.gov/iwcc/#Meeting, (last visited Nov. 6, 2018).

[5] FACA itself does not explicitly provide a private right of action, *see* 5 U.S.C. App. II § 1 *et seq.*, and there is no basis to infer such a right.  *Alexander v. Sandoval*, 532 U.S. 275, 286-87 (2001) ("[P]rivate rights of action to enforce federal law must be created by Congress.") (citations omitted).  As such, the complaint seeks review of its FACA-related allegations under the APA.  *See* Compl. ¶ 43.

Plaintiffs seek injunctive relief, including, among other things, "an order setting aside the Council's charter and enjoining Defendants from accepting advice or recommendations from the Council."  Compl. ¶ 12, Prayer for Relief.

## ARGUMENT

### I.   Legal Standards

On a motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, a plaintiff carries the burden of establishing that the Court has subject matter jurisdiction to adjudicate her complaint.  *See Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994).  Courts should "presume that [they] lack jurisdiction unless the contrary appears affirmatively from the record."  *Renne v. Geary*, 501 U.S. 312, 316 (1991) (citations omitted). When a district court lacks the statutory or constitutional authority to adjudicate a claim, that claim should be dismissed.  *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). Although a court must "accept as true all material factual allegations in the complaint," *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)), for purposes of assessing jurisdiction, it also must refrain from "drawing from the pleadings inferences favorable to the party asserting [jurisdiction]," *id.* (citing *Norton v. Larney*, 266 U.S. 511, 515 (1925)).  In ruling on a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), a court may consider evidence outside of the pleadings. *Makarova*, 201 F.3d at 113; *United States v. Vazquez*, 145 F.3d 74, 80 (2d Cir. 1998).

In considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must accept as true the well-pleaded factual allegations set forth in the complaint and draw all reasonable inferences in favor of the plaintiff.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).  That said, "[t]hreadbare recitals of the elements of a

cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555); *see also Cantor Fitzgerald Inc. v. Lutnick*, 313 F.3d 704, 709 (2d Cir. 2002) (explaining that a court need not give "credence to [a] plaintiff's conclusory allegations" (citation omitted)).  If well-pleaded factual allegations exist, the court must determine whether they plausibly give rise to an entitlement for relief.  *Iqbal*, 556 U.S. at 679.  Dismissal is appropriate "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.  When determining the sufficiency of a plaintiff's claim under Rule 12(b)(6), a court may consider, in addition to the factual allegations in the complaint, documents attached to the complaint as exhibits or incorporated in it by reference, matters of which judicial notice may be taken, and documents either in plaintiff's possession or of which plaintiff had knowledge and relied on in bringing suit. *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993).

## II.   Plaintiffs' Claims Must Be Dismissed Because Plaintiffs Lack Standing

Standing is necessary for parties to establish the existence of an Article III case or controversy and, thus, to invoke the jurisdiction of the federal courts.  *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408-09 (2013).  To establish the Court's jurisdiction, a plaintiff must plead facts that establish the three elements that constitute the "irreducible constitutional minimum of standing," *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992), namely, that they have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision," *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citation omitted).  "Where, as here, a case is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating each element." *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).

Organizations like Plaintiffs can establish standing in one of two ways.  They can sue on behalf of their members (known as "associational standing") or they can "have standing in [their] own right" (known as "organizational standing").  *N.Y. Civil Liberties Union v. N.Y. City Transit Auth.*, 684 F.3d 286, 294 (2d Cir. 2012).  Because Plaintiffs have failed to plead facts that satisfy Article III under either theory, this case should be dismissed for lack of subject matter jurisdiction.

### A.  Plaintiffs Do Not Have Organizational Standing

To establish organizational standing, a plaintiff must show "(i) an imminent 'injury in fact' to itself as an organization (rather than to its members) that is 'distinct and palpable'; (ii) that its injury is 'fairly traceable' to [the defendant's actions]; and (iii) that a favorable decision would redress its injuries."  *Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*, 868 F.3d 104, 109 (2d Cir. 2017) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

Plaintiffs allege that they are harmed by Defendants' actions because one of their missions is "educating their members and the public concerning the federal government's role in the international conservation of threatened and endangered species," and their "ability to provide such information is compromised" by Defendants' alleged failure to follow FACA.  *Id.* ¶¶ 26, 27.  Additionally, Plaintiffs allege that their exclusion from the Council and the alleged "shielding [of] much of the Council's work from public view," reduces their access to information about U.S. conservation policy, which in turn impedes their ability to carry out their work in certain treaty implementation working groups, *id.* ¶ 30, and their work "assisting organizations and governmental agencies in other countries to strengthen those nations' wildlife policies," *id.* ¶ 29.  Finally, Plaintiffs allege that because they "hav[e] been excluded from the

9

Council," they are "required to expend time and other organizational resources to keep abreast of the Council and its activities," including "devot[ing] staff time for the purposes of obtaining Council records that should be public, attending and recording Council meetings . . . and making Plaintiffs' views on Council business known to agency officials at DOI and FWS." *Id.* ¶ 28.

### 1. Plaintiffs Have Not Suffered An Informational Injury

Plaintiffs' theory of organizational standing is premised in large part on the allegation that Plaintiffs have suffered injury from being denied access to information about the IWCC's work. *See id.* ¶¶ 26-30. "[A] denial of access to information can, in certain circumstances, work an 'injury of fact' for standing purposes." *Elec. Privacy Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 878 F.3d 371, 378 (D.C. Cir. 2017) (internal quotation marks and citations omitted). However, "[t]o carry its burden of demonstrating a 'sufficiently concrete and particularized informational injury,' the plaintiff must show that '(1) it has been deprived of information that, on its interpretation, a statute requires the government or a third party to disclose to it, and (2) it suffers, by being denied access to that information, the type of harm Congress sought to prevent by requiring disclosure.'" *Id.* (quoting *Friends of Animals v. Jewell*, 828 F.3d 989, 992 (D.C. Cir. 2016)).

As an initial matter, Plaintiffs' alleged informational injury could only support standing for Count Two of the complaint—the only claim that alleges a lack of access to information. *See* Compl. ¶¶ 103-05; *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 169, 185 (2000) ("[A] plaintiff must demonstrate standing separately for each form of relief sought."). In Count Two, Plaintiffs allege that Defendants failed to provide them with certain IWCC records, with full access to IWCC and subcommittee meetings, and with adequate notice of those meetings. Compl. ¶ 104. Plaintiffs lack standing to bring this claim, however, because

10

they have failed to allege that they have "specifically requested, and been refused," the information and access they seek.  *Pub. Citizen*, 491 U.S. at 449.

In *Public Citizen*, the court held that an organization had standing to raise a FACA challenge when an advisory committee "refused [the organization's] request for" information. 491 U.S. at 449.  In reaching that conclusion, the Court looked carefully at another statute that grants a right to information, FOIA, and noted that FOIA plaintiffs are required to show that "they *sought and were denied* specific agency records," in order to establish standing.  *Id.* (emphasis added).  The court concluded that under both FACA and FOIA, a plaintiff needs to both ask for, and be denied, information in order to have standing to sue.  *See id.* at 449-50.  This requirement ensures that plaintiffs do not "rais[e] only a generally available grievance about government" that is common to all citizens.  *Lujan*, 504 U.S. at 573.

The D.C. Circuit recently reached the same conclusion in a FOIA case, holding that a "requester has suffered a particularized injury" only when "he has requested and been denied information Congress gave him a right to receive."  *Prisology, Inc. v. Fed. Bureau of Prisons*, 852 F.3d 1114, 1117 (D.C. Cir. 2017).  *Prisology* addresses the precise question at issue here— whether an alleged failure to publish information, without a request for that information by the plaintiff, is sufficient to "differentiate [the plaintiff] from the public at large."  *Id.* at 1116.  The answer to that question is no; an alleged agency failure to make information public, without more, implicates "a harm common to everyone, a harm of the sort *Lujan* described as not stating an Article III case or controversy."  *Id.* at 1116-17.  Plaintiffs have not alleged that they requested, and were denied, IWCC records.[6]  Accordingly, they are in the same position as every

---

[6] Plaintiffs also allege they were denied access to one of the IWCC's meetings.  Specifically, Plaintiffs allege that at least one of their members did not timely register for admission to the IWCC's first meeting, and was not permitted entrance.  Compl. ¶ 87.  But Plaintiffs also allege that at least one of their members was permitted to attend that

member of the public, and they lack standing to assert an informational injury.

### 2.   Plaintiffs Have Not Suffered Any Other Injury-in-Fact

Nor have Plaintiffs adequately alleged they have suffered any other injury-in-fact.  An

organizational plaintiff has standing "where the defendant's conduct or policy interferes with or

burdens [the] organization's ability to carry out its usual activities" or compels the organization

"to act with a consequent drain on its resources."  *Citizens for Responsibility and Ethics in Wash.*

*v. Trump,* 276 F. Supp. 3d 174, 190 (S.D.N.Y. 2017) (internal quotation marks and alteration

omitted) (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982)).  An organization's

"mere interest in a problem, no matter how longstanding the interest and no matter how qualified

the organization is in evaluating the problem, is not sufficient by itself to render the organization

adversely affected" so as to confer standing.  *Ctr. for Law & Educ. v. Dep't of Educ.*, 396 F.3d

1152, 1162 n.4 (D.C. Cir. 2005) (internal quotation marks omitted).

The leading case on organizational injury, *Havens Realty Corp. v. Coleman*,

demonstrates the distinction between a burden on an organization's activities (which confers

standing) and a burden on its social or advocacy interests (which does not).  In *Havens*, the

plaintiff, a non-profit fair housing organization, alleged that the defendant's racially

discriminatory steering practices "frustrated . . . its efforts to assist equal access to housing

through counseling and other referral services [and it] has had to devote significant resources to

identify and counteract" those practices as a result.  455 U.S. at 379.  The Court held that these

allegations "constitute[] far more than simply a setback to the organization's abstract social

interests" as the defendant's actions "have perceptibly impaired [the organization's] ability to

---

same meeting.  *Id.* ¶¶ 87-88.  As such, Plaintiffs do not allege that, at an organizational level, they requested and were denied access to any IWCC meeting.  Nor is it the case that if Plaintiffs had alleged that all of their members were shut out of a meeting that that would establish an informational injury at the pleading stage, particularly where the IWCC has made minutes and/or transcripts of each meeting publicly available.

provide counseling and referral services for low-and moderate-income homeseekers." *Id.* Accordingly, the organization had suffered an injury in its own right. *Id.*

Plaintiffs offer no specific facts demonstrating that Defendants' actions burdened their activities (as opposed to their advocacy interests) or forced them to spend resources to avoid such a burden. Plaintiffs state that Defendants' actions have required them to expend resources to "keep abreast of the Council and its activities" and to make their "views on Council business known to agency officials." Compl. ¶ 28. But Plaintiffs are advocacy organizations that would reasonably be expected to be engaging in such activities regardless of the alleged FACA violations. To establish standing, Plaintiffs must show "harms beyond interference with their ability to advocate on an issue of interest." *Taylor v. Bernanke*, No. 13-CV-1013, 2013 WL 4811222, at *11 (E.D.N.Y. Sept. 9, 2013); *see Ctr. for Law & Educ.*, 396 F.3d at 1161-62 (government action that forced organizations to change their lobbying strategies to a more costly form of lobbying did not have standing); *Elec. Privacy Info. Ctr. v. U.S. Dep't of Educ.*, 48 F. Supp. 3d 1, 23-24 (D.D.C. 2014) (organization's "expenditure of funds to promote its legislative agenda through research, education, outreach . . . , and litigation is a normal and critical part of its mission and operations"); *Doe v. Vill. of Mamaroneck*, 462 F. Supp. 2d 520, 542 (S.D.N.Y. 2006) (organization lacked standing where its "entire reason for being is to pursue the sort of advocacy . . . that it has pursued in this case"). That Plaintiffs spent resources "obtaining Council records that should be public," Compl. ¶ 28, is a budgetary choice they made in service of their advocacy efforts—not a response to a burden on their activities caused by Defendants' actions. *Elec. Privacy Info. Ctr.*, 878 F.3d at 379 ("Any resources EPIC used to counteract the lack of a privacy impact assessment—an assessment in which it has no cognizable interest— were a self-inflicted budgetary choice that cannot qualify as an injury in fact.").

Plaintiffs have failed to allege that Defendants' actions have caused them to suffer any injury-in-fact and, as such, they lack organizational standing.

### B.  Plaintiffs Do Not Have Associational Standing

Nor can Plaintiffs demonstrate they have standing on behalf of their members.  To establish associational standing, an organizational plaintiff must demonstrate, among other things, that "its members would otherwise have standing to sue in their own right."  *Bano v. Union Carbide Corp.*, 361 F.3d 696, 713 (2d Cir. 2004) (citation omitted).  To do this, a plaintiff must make "specific allegations that at least one identified member ha[s] suffered or [will] suffer harm."  *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009); *see Residents & Families United to Save Our Adult Homes v. Zucker*, 16-CV-1683 (NGG) (RER), 2018 WL 1175152, at *6 (E.D.N.Y. Mar. 5, 2018) (no associational standing where plaintiffs failed to allege injury to "any specific member of the association").  A plaintiff must also show that the member's injury is fairly traceable to the defendant's challenged conduct and that the injury is redressable.  *Spokeo*, 136 S. Ct. at 1547.

### 1.  Plaintiffs Do Not Plead That Any of Their Members Has Suffered an Injury-in-Fact

To show an "injury in fact," a member must have suffered "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"  *Spokeo*, 136 S. Ct. at 1548 (quoting *Lujan*, 504 U.S. at 560).  More specifically, a "particularized" injury is one that "affect[s] the plaintiff in a personal and individual way," and a "concrete" injury is one that "actually exist[s]," *i.e.*, it must be "real, and not abstract."  *Id.* (citations omitted).  And for an injury to be "actual or imminent," it "must be *certainly impending* . . . [a]llegations of *possible* future injury are not sufficient."  *Clapper*, 568 U.S. at 409 (citation omitted).  A plaintiff cannot depend on future injury for standing purposes if

14

that injury will only arise "at some indefinite future time." *See Lujan*, 504 U.S. at 564 ("'[S]ome day' intentions—without any description of concrete plans, or indeed even any specification of *when* the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require.").

Here, Plaintiffs allege that an unspecified number of their members have environmental interests that are potentially affected by Defendants' actions in establishing and managing the IWCC. Specifically, those members "enjoy observing imperiled—and often trophy-hunted— species in the wild," Compl. ¶ 20, "are personally vested in ensuring the continued survival of some of the world's most iconic imperiled species," *id.* ¶ 23, "derive scientific, aesthetic, recreational, and spiritual benefits from imperiled species that are commonly hunted for trophies," *id.* ¶ 24, "have recently visited Africa to view lions, elephants, rhinos, leopards, and giraffes in the wild," *id.*, and "have plans to visit Africa in the near future to view these animals in their natural habitats," *id.*[7]

An environmental plaintiff who avers that she uses an affected geographical area, including for wildlife watching, and "for whom the aesthetic and recreational values of the area will be lessened" by the challenged activity may adequately allege an injury-in-fact. *Laidlaw*, 528 U.S. at 169, 183 (internal quotation marks omitted). But for this type of interest "to be 'concrete,' there must be a geographic nexus between the individual asserting the claim and the location suffering an environmental impact." *WildEarth Guardians v. U.S. Dep't of Agric.*, 795 F.3d 1148, 1154 (9th Cir. 2015) (citation omitted). That is because "[t]he relevant showing for

---

[7] Plaintiffs also allege that their members have suffered informational injury because they "rely on the full and transparent release of government information . . . to stay informed of federal wildlife policies and laws." Compl. ¶ 25. Plaintiffs fail to establish that any one of their members has suffered an informational injury because the complaint contains no allegation that any specific member requested and was denied information from the IWCC. *See supra* Part II.A.1.

Article III standing is not injury to the environment but injury to the plaintiff." *Laidlaw*, 528 U.S. at 169.

Under the Supreme Court's precedent in *Laidlaw*, "an individual can establish 'injury in fact' by showing a connection to the area of concern sufficient to make credible the contention that the person's future life will be less enjoyable—that he or she really has or will suffer in his or her degree of aesthetic or recreational satisfaction—if the area in question remains or becomes environmentally degraded." *Ecological Rights Found. v. Pacific Lumber Co.*, 230 F.3d 1141, 1149 (9th Cir. 2000) (discussing *Laidlaw*, 528 U.S. at 183). While there is no prescribed formula for what constitutes a sufficiently concrete and particularized environmental injury-in-fact, "[f]actors of residential contiguity and frequency of use may certainly be relevant to that determination." *Id.* at 1149-50; *see Mancuso v. Consol. Edison Co. of N.Y.*, 130 F. Supp. 2d 584, 590 (S.D.N.Y. 2001) ("A person who has no connection to the polluted area does not have standing" to assert a claim under the Clean Water Act); *Knowles v. U.S. Coast Guard*, 924 F. Supp. 593, 600 (S.D.N.Y. 1996) (no standing for plaintiff who failed to plead "facts upon which the Court could find that injury to Governors Island will somehow be 'reflected' to [plaintiff] where he currently resides—a distance of approximately 100 miles from Governors Island").

Here, the complaint is completely devoid of specific allegations of harm to Plaintiffs' members' environmental interests. Plaintiffs do not identify any individual member either by name or by specific circumstances. *See* Compl. ¶ 24. They do not identify any particular site—other than "Africa"—any member has visited or intends to visit in the future. *See id.*; *Summers*, 555 U.S. at 495. Nor do Plaintiffs state the frequency with which any member has visited Africa to observe wildlife or provide any details about any member's plan to visit Africa for such purposes in the future. Compl. ¶ 24. Without such allegations, a sufficient nexus to the alleged

16

environmental harm cannot be found.  *See Wilderness Soc'y, Inc. v. Rey*, 622 F.3d 1251, 1256

(9th Cir. 2010) ("[A] vague desire to return to the area 'without any description of concrete

plans, or indeed any specification of *when* the some day will be' does not support a finding of

actual or imminent injury." (quoting *Summers*, 555 U.S. at 496)).  As such, Plaintiffs have failed

to adequately plead that any one of their members has suffered an injury-in-fact and thus cannot

establish associational standing.

> **2.   Plaintiffs Do Not Plead Facts That Could Satisfy the Causation or Redressability**
> **Elements of Associational Standing**

Plaintiffs also cannot satisfy the remaining two Article III standing requirements—

causation and redressability.

When a plaintiff claims to have suffered a procedural injury conferred by a statute (as

Plaintiffs do here), the plaintiff's burden on the causation and redressability prong of Article III

standing is "somewhat less rigorous."  *McCrory v. Adm'r of FEMA*, 22 F. Supp. 3d 279, 290-91

(S.D.N.Y. 2014) (citing *Lujan*, 504 U.S. at 572 n.7), *aff'd*, 600 F. App'x 807 (2d Cir. 2015); *see*

*generally Ctr. for Law & Educ.*, 396 F.3d at 1159 (describing difference between a procedural

right and a concrete interest in a procedural rights case).  The requirements are "not toothless in

procedural injury cases," however.  *Natural Res. Defense Council, Inc. v. Fed. Hous. Fin.*

*Agency*, 815 F. Supp. 2d 630, 637 (S.D.N.Y. 2011), *aff'd sub nom. Town of Babylon v. Fed.*

*Hous. Fin. Agency*, 699 F.3d 221 (2d Cir. 2012).  A plaintiff alleging a procedural injury "must

still demonstrate a causal connection between the [agency action] and the alleged injury to itself

or one of its members."  *Swanson Group Mfg. LLC v. Jewell*, 790 F.3d 235, 244 (D.C. Cir. 2015)

(internal quotation marks and citation omitted); *see R.J. Reynolds Tobacco Co. v. FDA*, 810 F.3d

827, 829 (D.C. Cir. 2016) (despite the relaxation of the causation element, a plaintiff "must still

demonstrate a distinct risk to a particularized interest") (internal quotation marks and citation

omitted).  And to show redressability, a plaintiff alleging procedural injury must show that it has "a procedural right that, if exercised[,] *could* protect [its] concrete interests."[8]  *Natural Res. Defense Council*, 815 F. Supp. 2d at 637 (internal quotation marks omitted).

Plaintiffs do not plead facts that could satisfy the causation element of standing. According to Plaintiffs, their "members' interests in protecting imperiled populations from harm and extinction are injured when the federal government authorizes United States hunters to kill and import members of those species."  Compl. ¶ 24.  Plaintiffs further allege that their members' injuries are "caused by the Defendants, who collectively exercise control over the Council's charter, disclosures, and meetings (and, therefore, the Council's policy recommendations)."  *Id.* ¶ 31.  To bridge the gap between Defendants' alleged FACA violations and Plaintiffs' members' alleged environmental injuries, Plaintiffs assume a highly speculative chain of events will occur:  first, that the specific FACA violations alleged by Plaintiffs will cause the IWCC to make pro-hunting policy recommendations to Interior; second, that Interior will choose to implement the IWCC's recommendations and change U.S. wildlife policy in one or more of the following ways:  by removing one or more species from the Endangered Species Act's ("ESA") endangered or threatened species lists, *see id.* ¶ 46, by making findings that one or more species fits into an exception to the ESA's protections, *see id.*, by making a non-detriment finding under the Convention on International Trade in Endangered Species of Wild Fauna and Flora, *see id.* ¶¶ 47-48, or by removing a restriction of the import of trophies through some other means, *see id.* ¶ 59; third, that Interior's policy change(s) will result in the extinction or diminishment of a population of wildlife in Africa such that at least one of Plaintiffs' members

---

[8] The alleged FACA violations are not themselves injuries for standing purposes as the Supreme Court has expressly held that the "deprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*—is insufficient to create Article III standing."  *Summers*, 555 U.S. at 496-97; *see Ctr. for Law & Educ.*, 396 F.3d at 1159-60.

who had concrete plans to view that species in Africa will be harmed by no longer being able to do so, *id.* ¶¶ 62-63.

This series of events is far too speculative to meet Article III's causation requirement. *See Summers*, 555 U.S. at 496-97.  There is uncertainty at every step.  First, correcting any alleged deficiencies in the creation and operation of the IWCC may not lead the Council to make different recommendations.  *See Fertilizer Inst. v. U.S. EPA*, 938 F. Supp. 52, 55 (D.D.C. 1996) (holding that "[p]laintiff's claimed injury is not 'fairly traceable' to the alleged FACA violation" of an allegedly unbalanced advisory committee because "there is no reason to believe that the Committee would do anything differently with one or two more industry representatives serving on it.").  Second, Interior's policies may not be impacted by the IWCC's recommendations. Indeed, in Plaintiffs' view, Interior is already determined to pursue the pro-hunting policies that Plaintiffs allege would cause harm to their members.  Compl. ¶ 67 (alleging the Secretary chartered the IWCC "[i]n order to create an advisory committee with a single-minded focus on the promotion of trophy hunting"); *see also id.* ¶¶ 1, 4-8, 10.  As such, it is not reasonably probable that changing the procedures governing the IWCC would alter Interior's policy decisions in the future.[9]  *See R.J. Reynolds*, 810 F.3d at 830 (allegedly improper appointment of members to an advisory committee "by no means rendered the risk of eventual adverse [agency] action substantially probable or imminent" and therefore did not support standing).  Finally, there is considerable uncertainty as to whether the pro-hunting policies that Plaintiffs allege Interior intends to pursue will result in the specific environmental harms (*i.e.*, loss of species populations) that will injure Plaintiffs' members.  As the complaint acknowledges, there are

---

[9] Additionally, in order for Interior to turn a recommendation made by the IWCC into policy, it will have to engage in rulemaking, and Plaintiffs can challenge Interior's actions at that time.  *See Fertilizer Inst.*, 938 F. Supp. at 55 ("If such rulemaking results in reliance on the [committee recommendations], and plaintiff disagrees with that decision, it can challenge EPA's action at that time.").

many factors other than U.S. policy on the importation of hunting trophies affecting the size and

health of African wildlife populations, including "inadequate regulation in countries where

trophy hunting transpires [and] the loss of hunting-related conservation revenue to corruption."

Compl. ¶ 59.  Further, Interior does not possess discretion to simply allow the importation of

hunting trophies.  As Plaintiffs allege, under the ESA, the Secretary determines which species

should be listed as "endangered" or "threatened" by applying certain factors and using the best

available science, *id.* ¶ 46 (citing 16 U.S.C. § 1533), and importation of trophies from these

species is prohibited unless certain exceptions apply, including that hunting the animal will

enhance the survival of the species, *id.* (citing 16 U.S.C. § 1539(a)(1)(A)).  Plaintiffs cannot

plead causation by asking the Court to assume that Interior will ignore these statutory strictures

and allow trophy hunting in a manner that harms species' survival.

Given the numerous assumptions required to establish that a specific member of one of

Plaintiffs' organizations will be injured by the alleged FACA violations, any such injury is not

fairly traceable to Defendants' actions.[10]  Plaintiffs allege a long chain of possibilities that is too

attenuated to show causation.  *See, e.g.*, *Pub. Citizen v. HHS*, 795 F. Supp. 1212, 1214 (D.D.C.

1992) (theory that "unbalanced membership of [committee] causes it to make certain biased

recommendations, which in turn cause government agencies to adopt policies favoring the

petroleum industry, which in turn cause the appellants to be injured as consumers and citizens" is

a "speculative chain of events . . . simply too attenuated to amount to injury in fact.") (discussing

*Metcalf v. Nat'l Petroleum Council*, 553 F.2d 176, 185-86 (D.C. Cir. 1977)).

---

[10] For the same reasons that Plaintiffs' alleged injuries are not fairly traceable to the conduct at issue in this case, those injuries are not imminent and thus do not qualify as injuries-in-fact.  *See Clapper*, 568 U.S. at 408-10 ("reli[ance] on a highly attenuated chain of possibilities . . . does not satisfy the requirement that threatened injury must certainly be impending"); *San Luis & Delta-Mendota Water Auth. v. Haugrud*, 848 F.3d 1216, 1233 (9th Cir. 2017) ("The Water Contractors' posited series of events that must occur before the economic harm is realized is both too uncertain and too remote to constitute a reasonably probable threat of injury.").

Nor do Plaintiffs show that the alleged injuries are likely to be redressed by a favorable decision in this case.  Plaintiffs allege conclusorily that their members' injuries "are redressable by an order . . . setting aside the Council's founding documents, prohibiting Defendants from relying on Council recommendations, and/or requiring Defendants to comply with FACA's requirements."  Compl. ¶ 32.  But such an order may have no effect on Interior's policymaking. *See Physicians Educ. Network, Inc. v. Dep't of Health, Education & Welfare*, 653 F.2d 621, 623 (D.C. Cir. 1981) (per curiam); *Doe v. Shalala*, 862 F. Supp. 1421, 1429 (D. Md. 1994) (holding plaintiffs lacked standing to challenge composition of NIH panel because relief plaintiffs sought, "preventing the Panel from issuing a report[,] could well have no effect whatsoever on the ultimate decision of the Secretary to fund such research").

In sum, Plaintiffs have failed to establish that they have suffered an organizational injury or that any of their members has suffered a concrete and imminent injury fairly traceable to Defendants' actions that is likely to be redressed through this case.  Accordingly, Plaintiffs lack standing to pursue their claims, and the complaint should be dismissed pursuant to Rule 12(b)(1).

## III.   Counts Three and Four Must Be Dismissed Because They Are Nonjusticiable

Two of Plaintiffs' four claims are nonjusticiable.  Congress has not provided any meaningful standards (in FACA or elsewhere) for adjudicating these claims.  As such, to review them, the Court would need to arbitrarily substitute its own policy judgments for the agency's. Because policymaking is the province of the other branches of government, the Court must leave these decisions to Interior, in whose discretion they are properly committed under the APA, and dismiss these claims for lack of subject matter jurisdiction.

### A.      Matters Committed to Agency Discretion by Law Are Not Reviewable

The APA, 5 U.S.C. §§ 551-706, establishes a waiver of sovereign immunity and a cause of action for injunctive relief for parties adversely affected by either agency action or agency failure to act.  *See* 5 U.S.C. §§ 702, 706(1)-(2).  The APA's waiver of sovereign immunity, however, is limited.  It does not apply in circumstances where "statutes preclude judicial review," 5 U.S.C. § 701(a)(1), or "agency action is committed to agency discretion by law," *id.* § 701(a)(2).

In *Heckler v. Chaney*, the Supreme Court articulated the fundamental inquiry for the application of section 701(a)(2):

> [E]ven where Congress has not affirmatively precluded review, review is not to be had if *the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion*.  In such a case, the statute ("law") can be taken to have "committed" the decisionmaking to the agency's judgment absolutely.

470 U.S. 821, 830 (1985) (emphasis added); *see also Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971) (section 701(a)(2) applies "where 'statutes are drawn in such broad terms that in a given case there is no law to apply'") (quoting S. Rep. No. 79-752, at 26 (1945)), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977).  Under *Heckler*, the starting point of any analysis under section 701(a)(2) is whether there is a "meaningful standard" provided in the governing statute.  *Lunney v. United States*, 319 F.3d 550, 558 (2d Cir. 2003); *see also Webster v. Doe*, 486 U.S. 592, 600 (1988) (application of section 701(a)(2) "requires careful examination of the statute on which the claim of agency illegality is based").

Where the statute does not provide any judicially manageable standard, "regulations promulgated by an administrative agency in carrying out its statutory mandate can provide

standards for judicial review." *Ctr. for Auto Safety v. Dole*, 846 F.2d 1532, 1534 (D.C. Cir.

1988) (per curiam).  However, "general statements of policy," 5 U.S.C. § 553(b)(3)(A), which

are prospective and do not grant rights or impose obligations, are not treated as binding norms

for purposes of identifying "law to apply" in the section 701(a)(2) context.  *Padula v. Webster*,

822 F.2d 97, 100 (D.C. Cir. 1987) (citation omitted).

No review is possible where the relevant statute is so vague and broadly drawn that it

does not provide a reviewing court any criteria for evaluating the agency's exercise of its

discretion.  *See Heckler*, 470 U.S. at 830; *see also, e.g.*, *Webster*, 486 U.S. at 600 (no criteria

provided to evaluate exercise of authority to remove employees whenever the "Director shall

*deem* such termination necessary or advisable in the interests of the United States") (citation

omitted); *Steenholdt v. FAA*, 314 F.3d 633, 638 (D.C. Cir. 2003) (power to rescind examiner's

license "at any time for any reason the Administrator considers appropriate" is not reviewable)

(citation omitted); *Claybrook v. Slater*, 111 F.3d 904 (D.C. Cir. 1997) (agency official's power to

adjourn an advisory committee meeting for a reason "in the public interest" is not reviewable).

Additionally, review is not permitted where the agency decision "involves a complicated

balancing of a number of factors which are peculiarly within its expertise," including what "best

fits the agency's overall policies."  *Lincoln*, 508 U.S. at 191, 193 (quoting *Heckler*, 470 U.S. at

831); *see, e.g.*, *Interstate Commerce Comm'n v. Bhd. of Locomotive Eng'rs*, 482 U.S. 270, 282

(1987) (agency's refusal to reconsider a prior decision based on an alleged "material error"

unreviewable due to the "impossibility of devising an adequate standard of review for such

agency action"); *Nat'l Fed'n of Fed. Emps. v. United States*, 905 F.2d 400, 405-06 (D.C. Cir.

1990) (no review where statute "sets forth nine specific criteria to be considered in making base

closing decisions").

Counts Three and Four of the Complaint ask to Court to review whether the IWCC violates two provisions of FACA.  Compl. ¶¶ 107, 111.  In Count Three, Plaintiffs allege that Defendants have violated FACA's "fair balance" provision, section 5(b)(2), which directs the President or the agency creating an advisory committee to "require the membership of the advisory committee to be fairly balanced in terms of the points of view represented and the functions to be performed by the advisory committee."  5 U.S.C. App. II § 5(b)(2); *see* Compl. ¶ 107.  In Count Four, Plaintiffs allege that Defendants have violated FACA's "inappropriat[e] influence" provision, section 5(b)(3), which requires that the President or creating agency put in place "appropriate provisions to assure that the advice and recommendations of the advisory committee will not be inappropriately influenced by the appointing authority or by any special interest, but will instead be the result of the advisory committee's independent judgment." 5 U.S.C. App. II § 5(b)(3); *see* Compl. ¶ 111.

These claims are nonjusticiable because Congress has not provided the courts with meaningful standards for determining what constitutes "fair balance" and "inappropriate influence."  *See Pub. Citizen v. Nat'l Advisory Comm. on Microbiological Criteria for Foods*, 886 F.2d 419, 431 (D.C. Cir. 1989) (per curiam) ("*Microbiological*") (Silberman, J., concurring).[11]  Without any such standard, the power to interpret and implement these provisions

---

[11]*Microbiological* was a *per curiam* decision with each panel member writing separately.  Judge Silberman found the requirements of FACA sections 5(b)(2) and 5(b)(3) to be nonjusticiable, 886 F.2d at 431, Judge Friedman did not specifically address justiciability but concluded that the agency had complied with the statute, *id.* at 424, and Judge Edwards, in dissent, found the relevant FACA sections to be justiciable and would have remanded to the district court, *id.* at 432.  Judge Silberman's concurrence in *Microbiological* has been relied upon and cited favorably by numerous courts for its persuasive explanation of why "fairly balanced" and "inappropriately influenced" claims under FACA are nonjusticiable.  *See Ctr. for Policy Analysis on Trade & Health ("CPATH") v. Office of the U.S. Trade Representative*, 540 F.3d 940, 945 (9th Cir. 2008); *Claybrook*, 111 F.3d at 906 n.4; *Ass'n of Am. Physicians & Surgeons, Inc. v. Clinton*, 997 F.2d 898, 903 n.2 (D.C. Cir. 1993); *Physicians Comm. for Responsible Med. v. Vilsack*, No. 16-cv-00069-LB, No. 16-cv-00069-LB, 2016 WL 5930585, at *6 (N.D. Cal. Oct. 12, 2016); *Lorillard, Inc. v. FDA*, 56 F. Supp. 3d 37, 40 n.7 (D.D.C. 2014), *vacated sub nom. R.J. Reynolds*, 810 F.3d 827; *Fertilizer Inst.*, 938 F. Supp. at 54 n.3; *Doe*, 862 F. Supp. at 1430-31; *Pub. Citizen*, 795 F. Supp. at 1218-22.

is committed to agency discretion by law under the APA, and the Court lacks subject matter jurisdiction over these claims.[12]

### B. Count Three Must Be Dismissed Because FACA's Fair Balance Provision Is Nonjusticiable

The appointment of persons to advisory committees is committed to agency discretion for purposes of the APA, and is thus unreviewable.  Indeed, GSA regulations implementing FACA explicitly state that "[u]nless otherwise provided by statute, Presidential directive, or other establishment authority, advisory committee members serve at the pleasure of the appointing or inviting authority" and their membership terms "are at the sole discretion of" the agency.  *See* 41 C.F.R. § 102-3.130(a).

In addition, FACA's section 5(b)(2) does not define "fairly balanced," nor does it specify how a "fairly balanced" membership on an advisory committee is to be achieved.   As an initial matter, "even before the points of view on an advisory committee can be balanced at all—'fairly' or otherwise—it must first be determined *which* points of view should be balanced." *Microbiological*, 886 F.2d  at 426 (Silberman, J., concurring).  And there is no "principled basis for a  federal court to determine which among the myriad points of view deserve representation on particular advisory committees." *Id.*  The "relevant points of view on issues to be considered by an advisory committee are virtually infinite." *Id.*; *Doe*, 862 F. Supp. at 1430 ("For the Court to become entangled in determining which viewpoints must be represented is for the Court to arbitrarily substitute its judgment for that of the agency.").

---

[12] While Plaintiffs invoke the APA's arbitrary and capricious standard, *see* Compl. ¶ 109, that "cannot be sufficient by itself to provide the requisite 'meaningful standard'" because otherwise, "[section] 701(a)(2)'s limitation on APA review would amount to no limitation at all, and nothing would ever be 'committed to agency discretion by law.'" *Lunney*, 319 F.3d at 559 n.5.

There is similarly no "principled way" to determine whether those views are fairly balanced.  *Microbiological*, 886 F.2d at 428 (Silberman, J., concurring).  Such a determination would require the Court to make "arbitrary judgments" about "which organizations or individuals qualified as bona fide" representatives of particular policy views.  *Id.* at 428-29; *see also Fertilizer Inst.*, 938 F. Supp. at 54 (finding the "fair balance" provision nonjusticiable because it would raise "difficult questions" such as, "What qualifications must someone have in order to be deemed an adequate representative of the chemical producers?  What if there is a diversity of views among different chemical producers – whose views would then represent the industry?").  Such a task is a manipulable policy choice that is "best left to the other branches of government."  *CPATH*, 540 F.3d at 945.[13]

The weight of authority has therefore concluded that "fairly balanced" claims under section 5(b)(2) of FACA are nonjusticiable.  *See id.* (FACA fails to "articulate what perspectives must be considered when determining if the advisory committee is fairly balanced"; the statute, therefore, "provide[s the court] with no meaningful standards to apply"); *Nat'l Parks Conservation Ass'n v. U.S. Dep't of Interior*, No. 2:11-CV-578-FTM-29SPC, 2012 WL 3589804, at *8-9 (M.D. Fla. Apr. 12, 2012), *report and recommendation adopted*, 2012 WL 3590061 (Aug. 20, 2012) ("[T]here is no indication from the provisions of the Organic Act, [or] FACA, that there is a meaningful standard to apply when considering whether the Secretary complied with the 'fairly balanced' requirement imposed by FACA."); *see also Sanchez v. Pena*, 17 F. Supp. 2d 1235, 1238 (D.N.M. 1998) ("[T]he task of creating a 'fair balance' . . . is a

---

[13] And even if Congress intended that there be judicial review of agency compliance with the "fairly balanced" requirement, such review would be constitutionally suspect because Congress may not constitutionally confer on the judiciary the power to make policy choices unguided by statutory standards.  *Microbiological*, 886 F.2d at 430 n.6 (Silberman, J., concurring); *cf. Metcalf*,  553 F.2d at 190 ("[T]o supervise the membership . . . of federal advisory committees on a continual basis and to alter the composition of these committees according to our subjective determinations as to 'fair balance'" would place the court in the "[inappropriate] role as the 'continuing monitors of the wisdom and soundness of Executive action.'") (citation omitted).

political one left to the discretion of the agency by statute and, under the alleged facts of this

case, is not a justiciable issue"); *Fertilizer Inst.*, 938 F. Supp. at 54 ("For the Court to become

entangled in determining what represents a 'fair balance' would require the Court to arbitrarily

substitute its judgment for that of the agency.  No meaningful standards are available to assist the

Court in making such determinations."); *Doe*, 862 F. Supp. at 1430 ("The balance of judicial

opinion holds that, by reason of the lack of judicial standards to address alleged 'imbalances' of

membership on such committees, Courts will not decide the issue; it is non-justiciable.") (citing,

*inter alia*, *Microbiological*, 886 F.2d at 425) (Silberman, J., concurring); *Pub. Citizen*, 795 F.

Supp. at 1220-21 (citing *Microbiological*, 886 F.2d at 426 (Silberman, J., concurring)).

There are no decisional standards here for the Court to apply concerning the appropriate

appointment philosophy to follow in establishing "fairly balanced" advisory committees.

Accordingly, Plaintiffs' fair balance claim as to the composition of the IWCC is not justiciable.

### C.  Count Four Must Be Dismissed Because FACA's Inappropriate Influence Provision Is Nonjusticiable

Similarly, Congress did not define "inappropriately influenced" or "special interest," nor

specify any procedures to assure that the "advice and recommendations of the advisory

committee will not be inappropriately influenced by the appointing authority or by any special

interest," within the meaning of FACA section 5(b)(3).  To determine whether an advisory

committee's advice and recommendations have been inappropriately influenced, a reviewing

court would need to answer at least three questions.

First, the Court would need to determine "when an interest is 'special' as opposed to

'general.'"  *Microbiological*, 886 F.2d at 430 (Silberman, J., concurring).  But a court does not

"have any way to determine what [special interest] means for purposes of judicial review . . . [as]

virtually anyone in the United States . . . [c]ould have . . . a special interest with regard to

27

some—perhaps all—advisory committees." *Id.* at 430-31; *see also Physicians Comm.*, 2016 WL 5930585, at *3 (noting absence of any definition of "special interest").

Second, a court would need to determine when a special interest (or the appointing authority) exerted "inappropriate influence." In *Colorado Environmental Coalition v. Wenker*, the court explained that "[t]he problem we have with this claim centers on the word 'inappropriate,'" given that the applicable statute and the relevant regulations had "call[ed] for various special interest groups to recommend candidates for appointment" to the committee and that "[i]t goes without saying that the special interests will recommend nominees who agree with their point of view." 353 F.3d 1221, 1231 (10th Cir. 2004) (per curiam). Consequently, the court concluded that "the statute does not give us any guidance as to when the line is crossed between appropriate and inappropriate influence." *Id.*; *see also Microbiological*, 886 F.2d at 431 (Silberman, J., concurring) ("[W]hat legally discernible principles could be employed to determine when a particular special interest is overly represented—when its influence is 'inappropriate?'"); *see also Physicians Comm.*, 2016 WL 5930585, at *3 ("[T]he court has seen no law describing when a participant may be held to have 'inappropriately' influenced' an advisory committee.").

Third, section 5(b)(3) "on its face, is directed to the establishment of *procedures* to prevent 'inappropriate' external influences on an already constituted advisory committee by outside special interests or the appointing body." *Microbiological*, 886 F.2d at 430 (Silberman, J., concurring). A court would thus need to put itself in the shoes of the President or agency administrator and determine how, preemptively, to prevent special interests from exerting inappropriate influence. Courts are ill-suited to craft such safeguards, as doing so is "really an executive branch function." *Fertilizer Inst.*, 938 F. Supp. at 54-55.

28

FACA provides this Court with no meaningful standard against which to answer any of these three questions and, as a result, determine whether the IWCC is being inappropriately influenced by the Secretary or special interests or has sufficient procedures to prevent such influence.[14]  While Plaintiffs criticize the ethics provision contained in the IWCC's Charter, they do not propose an alternative standard that would satisfy section 5(b)(3).  Compl. ¶¶ 82-83 (quoting Charter ¶ 13).  But even if they had, *Congress* has set forth no meaningful guidance for the Court to follow in applying section 5(b)(3).  Adjudicating this claim in the absence of such guidance would be "mak[ing] a policy judgment, and an arbitrary one at that," *Microbiological*, 886 F.2d at 431 (Silberman, J., concurring), which is an "utterly nonjudicial task," *id.* at 427.

## IV.    Counts One and Two Should Be Dismissed for Failure to State a Claim

Plaintiffs' two remaining claims allege that Defendants violated other provisions of FACA (and assorted regulations) in their formation and management of the IWCC.  In Count One, they allege that Defendants failed to make certain determinations required by FACA section 9(a) and a GSA regulation before establishing the IWCC.  *See* Compl. ¶¶ 99-102.  And in Count Two, Plaintiffs allege that Defendants violated section 10(b) of FACA and BLM regulations by failing to make available certain IWCC records and providing insufficient advance notice of and public participation at IWCC, subcommittee, and working group meetings.

---

[14] In Count Four of the complaint, Plaintiffs cite to 43 C.F.R. § 1784.2-2(a), a Bureau of Land Management ("BLM") regulation that prohibits "[p]ersons or employees of organizations who hold leases, licenses, permits, contracts or claims which involve lands or resources administered by the [BLM] from serving on advisory committees," except in certain circumstances.  43 C.F.R. § 1784.2-2(a); Compl. ¶ 111.  But regulations from Subpart 1784 of Title 43—the BLM chapter of the Code of Federal Regulations—apply only to advisory committees under the regulatory purview of BLM that advise "on matters relating to public lands and resources under the administrative jurisdiction of [BLM]."  43 C.F.R. § 1784.0-1.  The IWCC is administered by FWS, *see* Charter; 82 Fed. Reg. 51,857 (Nov. 8, 2017) ("AGENCY: Fish and Wildlife Service, Interior"), not BLM, and the IWCC does not address issues related to public lands, which are defined as "any lands and interest in lands owned by the United States administered by the Secretary of the Interior through the [BLM]."  43 C.F.R. § 1784.0-5(e).  The IWCC is not bound by regulations that apply exclusively to BLM advisory committees and such regulations cannot provide standards that the Court could apply to the IWCC.

*See id.* ¶¶ 103-05.  Accepting all of the allegations in the complaint as true for purposes of this motion to dismiss, neither of these counts states a claim upon which relief may be granted.

### A. Count One Must Be Dismissed Because Plaintiffs Plead Facts Showing Defendants Complied with the Provisions Governing the Establishment of the IWCC

Section 9(a) of FACA requires that, before an agency head establishes an advisory committee, he or she must determine "as a matter of formal record, . . . with timely notice published in the Federal Register," that the committee is "in the public interest in connection with the performance of duties imposed on that agency by law."  5 U.S.C. App. II § 9(a)(2).  Plaintiffs, however, claim that FACA requires an *explanation* as to why the IWCC is in in the public interest, rather than a *determination* that it is.  Compl. ¶¶ 71-72, 100.  But FACA requires only that the Secretary "determine" that the committee to be established is "in the public interest" in connection with the agency's legal duties, nothing more.  5 U.S.C. App. II § 9(a)(2).  That is precisely what the Secretary did in establishing the IWCC—he certified in the Federal Register that "the [IWCC] is necessary and is in the public interest in connection with the performance of duties imposed on the [DOI] 43 U.S.C. 1457, under the provisions of the Fish and Wildlife Act of 1956 (16 U.S.C. 742a-742j), and other Acts applicable to specific bureaus."  82 Fed. Reg. 51,857 (Nov. 8, 2017).  The level of detail in this certification is comparable to that in the certifications made by previous Interior Secretaries for the two other advisory committees Plaintiffs discuss approvingly in their complaint—the Wildlife and Hunting Heritage Conservation Council ("WHHCC"), and the Advisory Council on Wildlife Trafficking ("ACWT").  *See* Compl. ¶¶ 54, 66-67.[15]

---

[15] *See* 75 Fed. Reg. 6,056 (Feb. 5, 2010) ("I hereby certify that the [WHHCC] is necessary and is in the public interest in connection with the performance of duties imposed on [DOI] and the Department of Agriculture under 43 U.S.C. 1457 and provisions of the Fish and Wildlife Act of 1956 (16 U.S.C. 742a-742j), the Federal Land Policy

Plaintiffs also posit that a GSA regulation requires Defendants to explain "why the IWCC is 'essential to the conduct of agency business' or why 'the information to be obtained [through the IWCC] is not already available through another advisory committee or source within the Federal Government.'"  *Id.* ¶ 100 (quoting 41 C.F.R. § 102-3.30(a)) (internal citation omitted). But such a requirement is nowhere in the regulation.  To the contrary, that regulation requires only a "[d]etermination of need in the public interest," and unlike the determination required by FACA itself, the regulation imposes no requirement that the determination be published anywhere.  *Compare* 41 C.F.R. § 102-3.30(a), *with* 5 U.S.C. App. II § 9(a)(2) (requiring the relevant determination be made "as a matter of formal record . . . with timely notice published in the Federal Register").  The Secretary has, like his predecessors, fully complied with the requirements of FACA and its implementing regulations.  Count One, therefore, fails to state a claim.

## B. Count Two Should Be Dismissed Because Plaintiffs Plead Facts Showing the IWCC Has Complied with the Applicable Rules Governing Its Meetings and Records

In Count Two, Plaintiffs allege that the IWCC "has worked to keep its operations secret, limiting access to its meetings and failing to release documents related to those meetings" that it is required to make public under FACA section 10 and certain regulations.  Compl. ¶ 9; *see id.* ¶¶ 103-05.  But in fact, the allegations in the complaint establish that Defendants have complied with all of their open meetings and records obligations.  As such, Count Two also fails to state a claim.

---

and Management Act of 1976 (43 U.S.C. 1701 et seq.), the National Forest Management Act of 1976 (16 U.S.C. 1600 et seq.), the National Wildlife Refuge System Improvement Act of 1997 (16 U.S.C. 668dd-668ee) and Executive Order 13443, Facilitation of Hunting Heritage and Wildlife Conservation."); 78 Fed. Reg. 45,556 (July 29, 2013) ("I hereby certify that the [ACWT] is necessary and is in the public interest in connection with the performance of duties pursuant to [DOI's] authority under Executive Order 13648, 'Combating Wildlife Trafficking.'").

### 1.   Defendants Have Complied with Their Obligations Regarding IWCC Meetings

FACA section 10(a) requires that advisory committees be open to the public, that a notice of each meeting be published in advance in the Federal Register, and that "[i]nterested persons . . . be permitted to attend, appear before, or file statements with any advisory committee, subject to such reasonable rules or regulations as the Administrator may prescribe."  5 U.S.C. App. II § 10(a).  In addition, a GSA regulation directs that advisory committee meetings be announced by publication of a notice in the Federal Register "at least 15 calendar days prior to an advisory committee meeting" except in exceptional circumstances.  41 C.F.R. § 102-3.150.

Plaintiffs allege that the Federal Register notice for the IWCC's first meeting was made 14, rather than 15, days before the date of the meeting, Compl. ¶¶ 85-86 (citing 83 Fed. Reg. 9,021); that at least one of their employees missed the deadline for registering for the first IWCC meeting and was consequently turned away at the door, *id.* ¶ 87; and that another one of their employees (who did attend that same meeting) was "barred from speaking despite there being ample time to carry out the meeting's agenda," *id.*  Plaintiffs also allege that Defendants failed to announce or allow participation at IWCC subcommittee meetings in violation of DOI's Department Manual.  *Id.* ¶¶ 41, 97 (citing 308 DM 2.11).  Finally they allege that "the evening before and the morning of the Council's first meeting, the full Council was invited to convene with DOI officials," which "were neither open nor disclosed to the public."  *Id.* ¶¶ 89, 91.

Accepting all of these allegations as true for purposes of this motion, Defendants have complied with all rules related to the IWCC's meetings.  Each of the IWCC's meetings has been open to the public and has been announced sufficiently in advance to allow members of the public to attend.  *See id.* ¶ 87; 83 Fed. Reg. 9,021 (Mar. 2, 2018); 83 Fed. Reg. 25,684 (June 4,

32

2018); 83 Fed. Reg. 45,275 (Sept. 6, 2018).[16]  Indeed, Plaintiffs' members have attended IWCC

meetings.  Compl. ¶ 87.  That one or more of them did not register in time to attend the IWCC's

first meeting is not a FACA violation—Defendants are permitted to set "reasonable rules or

regulations" for public participation.  5 U.S.C. App. II § 10(a).  Nor is the fact that one of

Plaintiffs' members was not permitted to speak at an IWCC meeting a FACA violation for the

same reason.  *See id.*  The Federal Register notice for that meeting specifically provided that

attendees who wished to give oral comments "must contact the [designated agency official] to be

placed on the public speaker list for this meeting" and that "[n]onregistered public speakers will

not be considered during the meeting."  *See* 83 Fed. Reg. 9,022 (Mar. 2, 2018).  To facilitate full

public participation, however, persons who did not give oral comments were given the

opportunity to submit written comments to the agency following the meeting.  *Id.*

      Further, Plaintiffs have no right to attend meetings of the IWCC's subcommittees or

working groups.  FACA's requirements, along with the GSA's implementing regulations, "do

not apply to subcommittees of advisory committees that report to a parent advisory committee

and not directly to a Federal officer or agency."  41 C.F.R. § 102-3.35.  Plaintiffs argue that

BLM regulations and the DOI Manual permit them to attend such meetings (and access to related

records).  *See* Compl. ¶ 41 (citing 308 DM 2.11); *id.* ¶ 104(d) (citing 43 C.F.R. § 1784.4-3(c));

*id.* ¶ 104(e) (citing 43 C.F.R. § 1784.2-2).  But as discussed *supra* note 14, the BLM regulations

that Plaintiffs cite do not apply to the IWCC.  Nor can Plaintiffs use the DOI Manual to bootstrap

---

[16] Even if the Court disagrees with Defendants that Plaintiffs lack standing to bring this entire case for the reasons discussed *supra* Part II, Plaintiffs most certainly lack standing for their claim that the Federal Register notice for the March 16, 2018 IWCC meeting was published one day late—14 rather than 15 days in advance of the meeting— where at least one of their members had actual notice of and did attend that meeting.  *See Cargill v. United States*, 173 F.3d 323, 332 (5th Cir. 1999) (where plaintiff had actual notice of and was invited to each committee meeting, "technical violations of the [committee's] notice rules" were not an injury-in-fact).

a FACA claim.  *See id.* ¶ 41 (citing 308 DM 2.11).[17]  Unlike GSA regulations, "Interior's

manuals do not carry the force of law and are not binding."  *Nat'l Mining Ass'n v. Zinke*, 877

F.3d 845, 871 n.27 (9th Cir. 2017).  Finally, Plaintiffs' allegation that "the evening before and

the morning of the Council's first meeting, the full Council was invited to convene with DOI

officials," Compl. ¶ 89, does not plausibly suggest that there have been "secret" IWCC meetings

outside of the view of the public.

### 2.  Defendants Have Complied with Their Obligations Regarding IWCC Records

FACA section 10(b) requires that "the records, reports, transcripts, minutes, appendixes,

working papers, drafts, studies, agenda, or other documents which were made available to or

prepared for or by each advisory committee . . . be available for public inspection and copying"

subject to FOIA.  5 U.S.C. App. II § 10(b).  Additionally, FACA section 10(c) requires that each

committee keep detailed minutes that include an attendance list, and "a complete and accurate

description of matters discussed and conclusions reached."  *Id.* § 10(c).

Plaintiffs allege that certain materials were made publicly available only at IWCC

meetings, rather than prior to them.  Compl. ¶¶ 92-93.  Plaintiffs also allege that other materials

have not been made available at all, including certain Council agendas and reports on hunting, *id.*

¶ 94, "recordings, transcripts, or detailed minutes" of IWCC meetings, *id.* ¶ 95, records related to

IWCC's subcommittees, *id.* ¶ 97, and "comments filed in response to the announcement of the

charter, or the nominations for members," *id.* ¶ 98.

Plaintiffs misconstrue FACA's recordkeeping obligations.  First, Defendants are not

required to make IWCC materials available prior to Council meetings.  Indeed, the case that

Plaintiffs cite as support for their position that "the materials must be released well before the

---

[17] The DOI manual is available online.  *See* Electronic Library of the Interior Policies,
https://www.doi.gov/elips/browse (last visited Nov. 14, 2018).

relevant meeting," *id.* ¶ 42, states that FACA only requires that materials be provided "*before or at the meeting* at which the materials are used and discussed*." Food Chem. News v. HHS*, 980 F.2d 1468, 1472 (D.C. Cir. 1992) (emphasis added).  Plaintiffs' allegations thus demonstrate that the IWCC provided the materials in the manner required.  Second, comments filed in response to the IWCC's announcement and nominations for members—categories of records that pre-date the establishment of the Council—are not covered by FACA section 10(b), which applies only to certain records "made available to or prepared for or by [an] advisory committee."  5 U.S.C. App. II § 10(b).  Finally, as mentioned above, FACA's rules do not apply to subcommittees.  *See* 41 C.F.R. § 102-3.35.

Because none of Plaintiffs' allegations in support of Count Two could establish a violation of FACA or any applicable regulation, this claim should be dismissed under Rule 12(b)(6).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their motion to dismiss in full.

Dated:  November 14, 2018

        Respectfully submitted,

        GEOFFREY S. BERMAN
        United States Attorney for the
        Southern District of New York

By: */s/ Jennifer Jude*
        JENNIFER JUDE
        Assistant United States Attorney
        86 Chambers Street, 3rd Floor
        New York, New York 10007
        Telephone: (212) 637-2663
        Email: jennifer.jude@usdoj.gov