USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:___9/28/20___

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

National Resource Defense Council, *et al.*,

                    Plaintiffs,

          —v—

Ryan Zinke, *in his official capacity as Secretary of the Interior*, *et al.*,

                    Defendants.

18-cv-6903 (AJN)

OPINION & ORDER

ALISON J. NATHAN, District Judge:

Plaintiffs in this case challenge an advisory committee chartered by the Department of Interior, the International Wildlife Council, under the Federal Advisory Committee Act. They allege that the Department failed to properly charter the Council, failed to balance its membership to represent divergent views, and failed to disclose myriad records, among other things. However, while this litigation was pending, the International Wildlife Council's charter lapsed, and the Council no longer exists. Defendants have thus moved to dismiss this case as moot. For the reasons that follow, the Court GRANTS Defendants' motion and dismisses this case for lack of subject-matter jurisdiction.

## I.    BACKGROUND

### A.  The Federal Advisory Committee Act

Many federal agencies rely upon advisory committees in regulating and policymaking. These committees are "a fixture in the Nation's Capital . . . addressing almost all imaginable topics, from national policy matters to technical or scientific issues." *Cummock v. Gore*, 180

F.3d 282, 285–86 (D.C. Cir. 1999).  The Government "draw[s] heavily upon the advisory committee process as a part of its political machinery."  *Id.* at 286.

Almost a half-century ago, Congress grew concerned with advisory committees and sought to reign them in.  Advisory committees were viewed as being too costly yet producing little gain, leading to "the wasteful expenditure of public funds for worthless committee meetings and biased proposals."  *Public Citizen v. United States Dep't of Justice*, 491 U.S. 440, 453–54 (1989).  Congress also perceived that some agencies were creating advisory committees "without adequate justification."  *People for Ethical Treatment of Animals v. Barshefsky*, 925 F. Supp. 844, 847 (D.D.C. 1996).  And Congress worried that such committees "were often dominated by representatives of industry and other special interests seeking to advance their own agendas."  *Cummock*, 180 F.3d at 284–85 (citing H.R. REP. NO. 92–1017 (1972)).  Yet Congress also recognized that such committees were a useful "means of furnishing expert advice, ideas, and diverse opinions to the Federal Government."  *Id.* (citation omitted).  In 1972, Congress thus passed the Federal Advisory Committee Act, seeking to ameliorate some of these ills while still retaining and even amplifying advisory committees' utility.  *See Public Citizen*, 491 U.S. at 445–46.

For purposes of this opinion, it is useful to divide FACA's many requirements into two groups.  FACA contains a *records requirements*, which concerns public access to committee documents.  Unless a Freedom of Information Act exception applies, the statute requires that "the records, reports, transcripts, minutes, appendixes, working papers, drafts, studies, agenda, or other documents which were made available to or prepared for or by each advisory committee shall be available for public inspection and copying . . . until the advisory committee ceases to exist."  5 U.S.C. App. 2 § 10(b).  And FACA contains many *non-records requirements*.  Some of

these place limits and how and when an agency can create an advisory committee in the first place. *See id.* § 9(a)(2). Others require advisory committees to file a charter, give advance notice of meetings, and hold public meetings. *Id.* §§ 9(c), 10(a), 10(c). And others still require advisory committees to be "fairly balanced in terms of the points of view represented and the functions to be performed," *id.* § 5(b)(2), and "not be inappropriately influenced by the appointing authority or by any special interest," *id.* § 5(b)(3).

### B.  The International Wildlife Council

In November 2017, the Department of Interior announced the establishment of the International Wildlife Conservation Council (IWCC), an advisory committee. *See* 82 Fed. Reg. 51,857, 51,857–58 (Nov. 8. 2017). The agency's notice in the Federal Register stated that the Council would advise the Government on "increasing public awareness domestically regarding the conservation, wildlife law enforcement, and economic benefits that result from U.S. citizens traveling to foreign nations to engage in hunting." *Id.* Plaintiffs refer to this activity as trophy hunting. And the Council was designed to "advise the Secretary on the benefits international hunting has on foreign wildlife and habitat conservation, anti-poaching and illegal wildlife trafficking programs, and other ways in which international hunting benefits human populations in these areas." *Id.*

The Council held five meetings in 2018 and 2019. Administrative Record (A.R.), Dkt. No. 69, at 327, 520, 830, 2136, 2763. These meetings were generally open to the public, and their agendas and minutes about the meetings are now publicly available. *See* A.R. 325–2981. The Council also established four subcommittees, covering topics from conservation to animal trafficking. A.R. 515–16, 659; Alvarez Declaration, Dkt. No. 77, ¶ 9.

### C.  This Lawsuit

Plaintiffs are non-profit organizations working on issues related to wildlife conservation and the environment.  Complaint, Dkt. No. 1, ¶¶ 18–23.  In August 2018, they filed this action, alleging that the Interior Department and several of its leaders had violated FACA in establishing and operating the Council.  Specifically, Plaintiffs alleged that Defendants violated FACA's requirements that certain formal findings be made to establish a committee, that the committee's work be transparent and public, that the committee's membership be balanced, and that the committee establish safeguards against conflicts of interest.  Compl. ¶¶ 99–112.  Because FACA does not create a private right of action, Plaintiffs bring suit under the Administrative Procedure Act (APA), alleging that Defendants have acted "in a manner that is arbitrary, capricious, and contrary to law."  5 U.S.C. § 706; *see also In re Cheney*, 334 F.3d 1096, 1113 n.1 (D.C. Cir. 2003) (Randolph, C.J., dissenting) (noting that "[a]ll agree that FACA does not itself create a cause of action").  The Court has jurisdiction under the APA to review final agency action for which there is no other adequate remedy, as both parties agree is the case here.  *Id.*

A few months after the case was filed, Defendants moved to dismiss.  Dkt. No. 40.  The Court granted the motion in part and denied it part, narrowing the claims which could proceed. *See National Resources Defense Council v. Department of Interior*, No. 18-cv-6903 (AJN), 2019 WL 4601722 (S.D.N.Y. Sept. 23, 2019).

### D.  While This Case Was Pending, the IWCC Ended

Three months after the Court's motion-to-dismiss decision, the Defendants filed and served a certified administrative record.  Dkt. No. 69.  Per the briefing schedule the parties had agreed upon, Plaintiffs were to move for summary judgment in January 2020.  However, the month before, on December 19, 2019, the IWCC ended.  According to its charter, the Council was due to terminate two years after it was created unless it was renewed, as required by FACA.

A.R. 23 ("The Council will terminate 2 years from the date the charter is filed, unless, prior to

date, it is renewed in accordance with the provisions of section 14 of the FACA.  The Council

will not meet or take any action without a valid current charter."); *see* 5 U.S.C. app. II

§ 14(a)(2)(A) (advisory committee authority expires after two years unless the committee is

"renewed . . . by appropriate action prior to the end of such period."); 41 C.F.R. § 101-6.1015(a)

("appropriate action" to renew a committee includes publication of a notice of renewal in the

Federal Register).  The Council was not renewed, so its charter expired in December 2019.

Because the Council's charter has now lapsed and the Council no longer exists, Plaintiffs

recognize that "the Council can no longer meet or take any action whatsoever."  Pl. Br., Dkt. No.

74, at 10; *see also* A.R. 23 ("The Council will not meet or take any action without a valid current

charter.").  Plaintiffs nonetheless filed for summary judgment on their FACA claims.  Dkt. No.

73.  Defendants have moved to dismiss under Federal Rule of Civil Procedure 12(h)(3), arguing

that the case is moot as the Council's lapse has ended any lingering case or controversy between

the parties.  Plaintiffs' motion for summary judgment and Defendants' motion for dismissal are

now before the Court.

## II.    LEGAL STANDARD

"If the court determines at any time that it lacks subject-matter jurisdiction, the court

must dismiss the action."  Fed. R. Civ. P. 12(h)(3).  Article III of the Constitution limits the

jurisdiction of federal courts to the adjudication of actual, ongoing cases or controversies.  This

structural limitation "gives rise to the doctrines of standing and mootness."  *Foretich v. United*

*States*, 351 F.3d 1198, 1210 (D.C. Cir. 2003).  Article III requires that the "case or controversy

requirement subsist[] through all stages of federal judicial proceedings, trial and appellate."

*Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (internal quotation omitted).  To satisfy the requirement

of a case or controversy, "the plaintiff must have suffered or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Id.* (internal quotation omitted).  When the injury dissipates, a case has "lost its character as a present, live controversy of the kind that must exist if [the court is] to avoid advisory opinions on abstract questions of law." *Princeton Univ. v. Schmid*, 455 U.S. 100, 103 (1982) (internal quotation omitted).  At this point, the case becomes moot. *Id.*; se*e also U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980).  The Supreme Court has thus described mootness as "the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189–90 (2000) (internal quotation marks omitted)

Mootness is a jurisdictional defect, and the Court must dismiss the case under Rule 12(h)(3) if there is no longer a live case or controversy between the parties.  *Blackwater v. Safnauer*, 866 F.2d 548, 550 (2d Cir. 1989).  Federal courts cannot "give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." *Church of Scientology v. United States*, 506 U.S. 9, 12 (1992).  "The burden of proving jurisdiction is on the party asserting it." *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994); *see also Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005) ("The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence.").[1]

---

[1] Plaintiffs contend that Defendants bear the burden of proof to show mootness, because they mooted the case through the voluntary cessation of the Council.  But the Court below concludes that this exception to mootness in not applicable here.  As the party asserting jurisdiction, Plaintiffs therefore bear the burden in this inquiry.

### III.   PLAINTIFFS' CLAIMS ARE MOOT, AND NO EXCEPTION TO MOOTNESS DOCTRINE APPLIES

#### A. Plaintiffs' Non-Records Claims Are Moot

The Court begins with Plaintiffs' non-records claims.  To recap, Plaintiffs allege that the Interior Department violated FACA by (1) failing to comply with statutory and regulatory procedures for establishing advisory committees, such as by not preliminarily concluding that the Council was in the public interest, (2) composing the Council's membership in a manner that was not fairly balanced, (3) and failing to institute appropriate safeguards against special interests.  *See* Pl. Br. at 11–17.  Defendants contend that these claims are now moot.

Defendants are correct.  Now that the Council is defunct, there is no further relief for the Court to order that would ameliorate these concerns.  For example, in their complaint, Plaintiffs seek an injunction ordering "the IWCC and any of its subdivisions from meeting . . . and otherwise conducting committee or subcommittee business."  Compl. at 32–33 (prayer for relief).  Because the Council no longer exists, the Court is powerless to grant this sort of relief.  Similarly, the Court cannot now order the Council to reconstitute its membership, such that it would be fairly balanced under FACA.  At this juncture, any decision holding that the Council violated FACA by, for example, having an improper membership would be purely advisory.  And as the Court explains below, Plaintiffs' attempt to shoehorn this sort of a pronouncement into the Court's power to grant declaratory relief also fails.

Courts agree that non-records claims like the ones here do not survive the termination of a FACA advisory committee.  The only binding case in this area supports the Court's conclusion.  In *National Nutritional Foods Ass'n v. Califano*, trade associations challenged an FDA advisory committee regarding protein supplements.  457 F. Supp. 275, 276–77 (S.D.N.Y. 1978) (Sand, J.).  The district court granted dismissal partially because plaintiffs' claims had become mooted.  *Id.*

at 281.  On appeal, Judge Friendly, writing for a unanimous Second Circuit, affirmed.  603 F.2d 327, 334 (2d Cir. 1979).  Specifically, the court upheld the district judge's decision not to issue injunctive relief "in light of the Government's agreement not to reconvene this particular [advisory committee.]".  *Id.* at 336.

Courts in the D.C. Circuit, which more frequently address issues of administrative law like this one, agree that dismissal is warranted in this posture.  For example, in *Center of Biological Diversity v. Tidwell*, one of the plaintiffs in this case challenged an advisory committee created by the Department of Agriculture to "develop a conservation strategy for the California spotted owl."  239 F. Supp. 3d 213, 216, 218 (D.D.C. 2017).   Much like here, plaintiff alleged that the agency had violated FACA (and thus the APA) by failing to have a committee that was fairly balanced in terms of the points of view represented.  *Id.* at 220.  But by the time the Court considered plaintiff's claim, "the FACA advisory committee at issue in [the case] . . . no longer exist[ed].".  *Id.* at 223.  The court therefore concluded that "Plaintiff's claims for violations of FACA's procedural requirements"—the non-records claims—"[were] moot, and must be dismissed."  *Id.* at 227.

Other courts have reached the same result, and the Court finds their reasoning persuasive.  *See, e.g.*, *Tidwell*, 239 F. Supp. 3d at 223 (noting that "courts in the D.C. Circuit have routinely held that claims based on FACA's other procedural requirements are mooted when the relevant advisory committee ceases to exist" and citing cases); *Freedom Watch, Inc. v. Obama*, 859 F. Supp. 2d 169, 174 (D.D.C. 2012) ("Because there are no grounds to find that the alleged committee, even if it did at some point exist, exists at present, the case is moot with respect to [plaintiff's] claims for advance notice of, and the ability to participate in, any future meetings of the [committee], and with respect to . . . the appointment of 'at least one person with a different

point of view' to the committee."); *Citizens for Responsibility & Ethics in Washington v. Duncan*, 643 F.Supp.2d 43, 51 (D.D.C. 2009) ("Regarding the Department's other alleged FACA violations, including the violation of FACA's open meetings and charter requirements, the Department's establishment of the New Panel renders these claims moot."); *Ass'n of Am. Physicians & Surgeons, Inc. v. Clinton*, 879 F. Supp. 103, 106 (D.D.C. 1994) (noting that if an advisory committee is disbanded, "there will simply be no continuing case or controversy for judicial resolution. Nor will there be any basis for injunctive or other equitable relief. The case will in fact be moot, and defendants will be legally entitled to dismissal."); *see also Seattle Audubon Soc'y v. Lyons*, 871 F. Supp. 1291, 1309 (W.D. Wash. 1994) ("[O]nce a committee has served its purpose, courts generally have not invalidated the agency action even if there were earlier FACA violations."), *aff'd*, 80 F.3d 1401 (9th Cir. 1996).

The Court therefore dismisses Plaintiffs' non-records claims (i.e., claims other than those arising under FACA's document-disclosure provision of section 10(b)) as moot.

### B. Plaintiffs' Records Claims Are Moot

#### A. The Council's Lapse Does Not Automatically Moot Plaintiffs' Claims

The Court turns next to Plaintiffs' records claims under FACA section 10(b), which admittedly present a closer question. As noted, FACA provides for public access to certain advisory committee materials. 5 U.S.C. App. 2 § 10(b). Agencies are required to make section 10(b) materials available to the public as a matter of course, unless a FOIA exception applies. *See Food Chem. News v. Dep't of Health & Human Servs.*, 980 F.2d 1468, 1472 (D.C. Cir. 1992).

This duty to disclose can extend beyond the life of the advisory committee itself. "The federal government's statutory duty under FACA to allow the public to inspect and copy

documents may be limited in time by the statute, but the ability of a court to award access to the documents as relief for previous violations of that duty is limited only by the existence of the documents." *Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Grp.*, 219 F. Supp. 2d 20, 30 (D.D.C. 2002).  As the court in *Judicial Watch* explained, FACA creates a disclosure requirement that agencies must follow, even after an advisory committee is dissolved.  "Whether or not plaintiffs sued before or after the group terminated does not alter the allegation that the government failed to meet the substantive requirements of the statute during the relevant timeframe.  Assuming the facts in the complaints to be true, the government violated the public access provisions of the statute." *Id.*  Indeed, even after the committee is defunct, courts can still grant relief, such as ordering the agency to disclose the relevant documents.  *Id.*; *see also Cummock v. Gore*, 180 F.3d 282, 289 (D.C. Cir. 1999).  The lapsing of the Council here therefore does not, by itself, render Plaintiffs' claims moot.

What would moot this case, however, is if the documents Plaintiffs seek have already been released.  Once the documents in question have been disclosed, courts generally agree that a records claim under FACA is moot.  *See Tidwell*, 239 F. Supp. 3d at 227 ("A claim for document disclosure survives the termination of a FACA advisory committee, *at least until all of the relevant materials have been disclosed*." (emphasis added)); *Nat'l Energy*, 219 F. Supp. 2d at 30 ("whether relief [seeking section 10(b) materials] is available is contingent not on the continued existence of the group, but on the continued existence of the records and information"); *cf. Freedom Watch, Inc. v. Obama*, 859 F. Supp. 2d 169, 175 (D.D.C. 2012) (noting that the lapse of an advisory committee does not moot a FACA claim if agency members still possess covered documents and have not released them publicly, even if those agency members are different than the custodian who kept the documents while the advisory committee

10

was operating).  Indeed, this follows from general principles of mootness—if a party seeking certain relief obtains that relief through other means, there is generally no longer a case or controversy for the court to address.  Plaintiffs recognize as much; they correctly note that "[t]he only question [for the Court to resolve on their records claim] . . . is whether there may yet be public materials that Defendants have not released."  Pl. Reply Br., Dkt. No. 79, at 4.  In short, the mootness inquiry here melds with the merits of Plaintiffs' records claim—to save this case from mootness, Plaintiffs must show, by a preponderance of the evidence, that there are still records to which they are entitled that have not been disclosed.  *See Aurecchione*, 426 F.3d at 638.

### B.  Plaintiffs Have Not Met Their Burden

Defendants contend that they have now "searched for and disclosed all records of the IWCC and its subcommittees that are covered by Section 10(b) of the Federal Advisory Committee Act," thus mooting Plaintiffs' records claim.  Def. Reply Br., Dkt. No. 86, at 1.  In support of this position, Defendants have submitted a lengthy administrative record, providing many of the documents that must be disclosed under § 10.  *See* Dkt. No. 69.  And the agency has made much of the Council's deliberative work and work product publicly available on its website.  *See* U.S. Fish & Wildlife Service, International Wildlife Conservation Council, https://www.fws.gov/iwcc/.

Defendants have also submitted four declarations from agency officials, discussing the scope of the agency's searches for covered material and providing disclosures of additional material.  For example, Eric Alvarez served as the Council's Designated Federal Officer, a role in which he called Council meetings, approved agendas, chaired meetings, and oversaw the Council's logistics and administration.  *See* Alvarez Decl. ¶¶ 2, 4.  Alvarez provides information

relevant to the agency's disclosure obligations.  To start, he affirms that "[a]ll documents produced or received by the IWCC are posted on the Council's website." *Id.* ¶ 5.  Before submitting the declaration, he also took measures "to ensure that all documents made available to or prepared for the IWCC and its subcommittees had been publicly disclosed," such as reviewing his electronic and appear files, speaking to other agency members, reaching out to the Council's Chair, Co-Chair, and subcommittee chairs, and asking others to review their files.  *Id.* ¶ 6 (outlining these measures in detail).  These steps revealed two additional documents subject to disclosure, which are attached to the declaration.  Besides those two documents, Alvarez was "not aware of any documents made available to or prepared by the Council or one of its subcommittees that have not been made public." *Id.* ¶ 7.  And Alvarez noted that although the agency did not believe certain other documents were subject to disclosure, they were nonetheless made public.  *Id.* ¶ 11.  The other declarations submitted by Defendants are similar.  Douglas Hobbs, who also worked as a Designated Federal officer for several committees and substituted in as DFO during one Council meeting, noted that many documents requested by Plaintiffs were publicly available and attached a few that had not yet been disclosed.  *See* Dkt. Nos. 78, 87. Lastly, Cade London, who assisted Alvarez and other members of the Council, provided some additional documents he received from reaching out to various Council members.  Dkt. No. 88. In sum, Defendants have disclosed thousands of pages of administrative record, put forward detailed declarations affirming that they have searched for additional documents requiring disclosure, and filled disclosure gaps by putting forward additional documents.

Plaintiffs however raise various arguments for why these disclosures are insufficient — and thus why the Court should reach the merits.  But each argument fails.  To start, Plaintiffs attempt to poke holes in Defendants' disclosures by listing documents that the agency has

purportedly failed to disclose.  *See, e.g.*, Pl. Reply. Br. at 4 (discussing allegedly unreleased subcommittee documents).  Some of these documents, however, were already disclosed at the time of Plaintiffs' filing.  *See* London Supp. Decl. ¶ 4 ("The two documents distributed by John Jackson that Plaintiffs argued were not produced, [Pl. Reply Br. at 4,] are on the IWCC's website and in the Administrative Record at the following locations . . . .)"; *Id.* (noting that another document requested by Plaintiffs had already been disclosed); Hobbs Supp. Decl. ¶ 4 (same). Moreover, the agency made limited additional disclosures in response to Plaintiffs' filing, providing the few documents Plaintiffs identified with specificity that were still undisclosed.  *See* Hobbs Supp. Decl. ¶ 4.

Besides these already-disclosed documents, Plaintiffs repeatedly claim that the agency still has troves of documents that it has yet to disclose.  For example, Plaintiffs contend there may be "lines of communication" between the Council and the Interior Department's leadership through which "the Council transmitted some of its most important material."  Pl. Reply. Br. at 7.  Plaintiffs also contend that the search protocols used by Defendants were inadequate.  And Plaintiffs rely upon "the Department's half-hearted commitments to transparency" to argue that "[t]here is no reason to believe that Defendants, left to their own devices, have finally cured [disclosure] defects."  *Id.* at 9.

However, this conjecture is insufficient to satisfy Plaintiffs' burden.  In determining whether an agency has adequately searched for and produced documents, a court may rely on affidavits submitted by agency members because "these affidavits are equally as trustworthy when they aver that all documents have been produced or are unidentifiable as when they aver that identified documents are exempt."  *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978). Agency affidavits "enjoy a presumption of good faith, which will withstand purely speculative

claims about the existence and discoverability of other documents." *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981).  To be afforded this presumption, the affidavits must be "'relatively detailed' and non-conclusory and . . . submitted in good faith." *Id.* (quoting *Goland*, 607 F.2d at 352).  The affidavits should explain "the scope and method of the search." *Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982); *see also Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1487 (D.C. Cir. 1984) (affidavits must demonstrate a "good-faith effort to locate responsive materials."); *Citizens for Responsibility and Ethics in Washington v. Duncan*, 643 F. Supp. 2d 43, 48 (D.D.C. 2009) (summarizing this standard).  Once the agency has presented an "adequately detailed affidavit, the burden then shifts to the plaintiff to present evidence suggesting that the search was not adequate." *Duncan*, 643 F. Supp. 2d at 48 (citing *Ground Saucer Watch, Inc.*, 692 F.2d at 771).  If the plaintiff fails to present such evidence, the agency maintains its "presumption of good faith." *Id.* (citation omitted); *see also Ground Saucer Watch*, 692 F.2d at 771; *Physicians Comm. for Responsible Medicine v. Glickman*, 117 F. Supp. 2d 1, 4 (D.D.C. 2000).

As noted, the agency has submitted multiple detailed declarations regarding its search protocols and subsequent disclosure.  *See, e.g.*, Alvarez Decl. ¶ 4.  These documents are sufficiently detailed and non-conclusory to warrant a presumption of good faith regarding the agency's search.  *Accord Duncan*, 643 F.Supp.2d at 48–49; *see also Perry*, 684 F.2d at 127 ("[T]he affidavits of the responding agency [need not] set forth with meticulous documentation the details of an epic search for the requested records.").  And despite the extensive disclosures in this case, Plaintiffs fail to provide any evidence to support their contention that the agency continues to possess documents requiring disclosure.  To be clear, Plaintiffs at this stage cannot rely on conjecture alone, and Plaintiffs must put forward evidence in the record to support their

assertions and meet their burden of proof.  *Duncan*, 643 F. Supp. 2d at 49; *Perry*, 684 F.2d at 127 (noting that plaintiffs must put forward "specific evidence" to rebut the presumption).  They have not done so, and their arguments instead amount to no more than "mere speculation that as yet uncovered documents may exist."  *See Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 316 (D.C. Cir. 2003) (cleaned up); *see also Physicians Comm. for Responsible Med. v. Glickman*, 117 F. Supp. 2d 1, 4 (D.D.C. 2000).

Moreover, Plaintiffs provide no authority supporting the proposition that, in this posture, they should be afforded not only a court order requiring the agency to make additional searches and potential disclosures, but also *summary judgment* on their claim under section 10(b) *and* final injunctive relief.  *See* Pl. Br. at 17–19 (seeking summary judgment, injunctive relief, and declaratory relief on the records claim).  To the contrary, Plaintiffs generalized assertions would be sufficient only if this case was on a Rule 12 posture, in which the Court would have to accept their allegations as true.  In that posture, courts have denied motions to dismiss on grounds of mootness and permitted discovery to determine whether the agency complied with its FACA records obligations.  For example, in *Freedom Watch v. Obama*, the agency argued that plaintiffs' records claim was mooted by the advisory committee's lapse.  859 F. Supp. 2d 169, 174–75 (D.D.C. 2012).  The court however concluded that plaintiffs' allegations regarding potentially undisclosed documents was sufficient to defeat the motion to dismiss.  The court also rejected the agency's attempt to provide affidavits like the ones here as an improper attempt to convert the motion into one seeking summary judgment, and instead ordered the parties to proceed to discovery.  *Id.* at 175 ("Freedom Watch's claim for committee materials therefore must be resolved on the merits."); *see also Tidwell*, 239 F. Supp. 3d at 228–29 (on similar facts, permitting a records claim to proceed to discovery).  The posture here, however, is different.

Plaintiffs bear the burden of proving jurisdiction by a preponderance of the evidence.  In
response to Defendants' comprehensive evidence indicating that they have satisfied FACA's
record requirements, Plaintiffs put forward only conjecture.  That is not enough.

Similarly, Plaintiffs reliance on *Lawyers Committee for Civil Rights under Law v.
Presidential Advisory Committee on Election Integrity* is misplaced.  265 F. Supp. 3d 54 (D.D.C.
2017).  There, the court ordered the agency to produce a declaration detailing its definition of
§ 10(b) documents, its steps to identify such documents, and a privilege log for withheld
documents.  D.D.C. Case No. 17-cv-1354 (CKK), Dkt. No. 28; Dkt. No. 79 Ex. C.  However, the
advisory committee in that case was not defunct, so mootness was not at issue.  And the
procedural posture was different—the case was brought as a temporary restraining order, and the
court issued this relief as part of limited initial discovery.  The case was not on summary
judgment, the agency did not seek dismissal, and the court was not faced with a request for a
final injunction.  *Id.  Lawyers Committee* thus has little bearing on whether this case is moot.

Moreover, Plaintiffs' novel attempt to seek disclosure of "deliberative material" under
FACA sections 5 and 9, "as a means to rectify the Council's unbalanced composition," also fails.
Pl. Reply. Br. at 10–11.  Plaintiffs do not argue that the text of these FACA provisions requires
such disclosure; indeed, these provisions say nothing of the sort.  *See* 5 U.S.C. App. II §§ 5, 9.
Instead, Plaintiffs rely on a single D.C. Circuit case, *Cummock v Gore*, in support of this theory.
180 F.3d 282 (D.C. Cir. 1999).  There, a *member* of an advisory committee alleged she was
excluded from the committee's deliberations.  Among other things, she sought copies of the
committee's deliberative materials.  The court held she was entitled to these documents because
she was a committee member.  *Id.* at 292.  Plaintiffs, of course, were not members of the IWCC.
And their claim challenging the Council's composition does not convert them into *de facto*

members.  Nothing in the statute's text, its implementing regulations, or the D.C. Circuit's logic

in *Cummock* supports such a novel extension of FACA.

In sum, the Court concludes that Plaintiffs have not shown, by a preponderance of the

evidence, that their records claims are not moot.  *Accord Payne Enterprises v. United States*, 837

F.2d 486, 491 (D.C. Cir. 1988) ("A declaration that an agency's initial refusal to disclose

requested information was unlawful, after the agency made that information available, would

constitute an advisory opinion in contravention of Article III of the Constitution"); *Hill v. U.S.

Air Force*, 795 F.2d 1067, 1071 (D.C. Cir. 1986); *Duncan*, 643 F. Supp. 2d at 47–50.

### C.  No Exception to Mootness Applies

To escape this jurisdictional hurdle, Plaintiffs argue that the lapse of the Council should

not moot this case, because the Defendants themselves chose to let the Council come to an end.

This is often referred to as the voluntary-cessation exception to mootness.  The exception

recognizes that "a defendant cannot automatically moot a case simply by ending its unlawful

conduct once sued."  *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013).  "Otherwise, a

defendant could engage in unlawful conduct, stop when sued to have the case declared moot,

then pick up where he left off, repeating this cycle until he achieves all his unlawful ends."  *Id.*

Given this potential for abuse, a defendant "claiming that its voluntary compliance moots a case

bears the formidable burden of showing that it is absolutely clear the allegedly wrongful

behavior could not reasonably be expected to recur."  *Laidlaw*, 528 U.S. at 190.  At bottom, the

"rule traces to the principle that a party should not be able to evade judicial review, or to defeat a

judgment, by temporarily altering questionable behavior."  *City News & Novelty, Inc. v. City of

Waukesha*, 531 U.S. 278, 284 n.1 (2001).

In this circuit, there is a two-part test to determine if the voluntary-cessation exception applies.  A case is moot, despite a defendant's voluntary cessation, "if the defendant can demonstrate that (1) there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation."  *Clear Channel Outdoor, Inc. v. City of New York*, 594 F.3d 94, 110 (2d Cir. 2010) (citation omitted); *see also Gropper v. Fine Arts Housing, Inc.*, 12 F. Supp. 3d 664, 670 (S.D.N.Y. 2014).

Applying this framework, the Court concludes that Defendants have met their "heavy burden," *Laidlaw*, 528 U.S. at 190, for several reasons.  On the first prong, the Council has lapsed, and it is undisputed that the time to renew it has passed.  *See* 5 U.S.C. App. II § 14(a)(2)(A); 41 C.F.R. § 101-6.1015(a).  So for the alleged violation to recur, the agency would have to charter *another* advisory committee with the same mission.  Defendants represent—and Plaintiffs do not provide any evidence to the contrary—that "there is no reasonable expectation that" this will come to pass, especially as this would require "a labor-intensive process that would require the agency to start again from the very beginning."  Def. Reply. Br. at 9.  Additionally, "where the defendant is a government entity, some deference must be accorded to its representations that certain conduct has been discontinued."  *Lamar Advert. of Penn, LLC v. Town of Orchard Park, New York*, 356 F.3d 365, 376 (2d Cir. 2004) (cleaned up); *Harrison & Burrowes Bridge Constructors, Inc. v. Cuomo*, 981 F.2d 50, 59 (2d Cir. 1992).  Courts have repeatedly applied this deference in FACA cases where an agency represents that a committee has been disbanded and the agency does not plan to reinstate it.  *See Citizens for Responsibility and Ethics in Washington v. S.E.C.*, 858 F. Supp. 2d 51, 61–62 (D.D.C. 2012) ("Circuits have consistently recognized that where the defendant is a government actor—and not

a private litigant—there is less concern about the recurrence of objectionable behavior.") (collecting cases); *see also Tidwell*, 239 F. Supp. 3d at 225.  Moreover, just because the agency *could* reconstitute a committee like the Council in the future does not mean that the purportedly wrongful conduct here would be repeated.  *See Tidwell*, 239 F. Supp. 3d at 225–26; *CREW*, 858 F. Supp. 2d at 61; *Larsen*, 525 F.3d at 4 ("[T]he mere power to reenact a challenged policy is not a sufficient basis on which a court can conclude that a reasonable expectation of recurrence exists.  Rather, there must be evidence indicating that the challenged policy likely will be reenacted." (cleaned up)).  Plaintiffs have provided no evidence suggesting that Defendants will reconstitute the Council—let alone evidence sufficient to overcome the deference afforded to the agency.

Moreover, courts have found that the voluntary-cessation doctrine applies where "suspicious timing and circumstances pervade" a defendant's decision to end the purportedly unlawful conduct.  *See Mhany Mgmt., Inc. v. County of Nassau*, 819 F.3d 581, 604 (2d Cir. 2016).  In this situation, courts infer that the defendant will renew its activity after the litigation concludes.  For example, the Second Circuit in *Mhany* was troubled that "various actions with respect to the [construction of the] courthouse," which related to the plaintiffs' challenge, "*appear[ed] to track the development of this litigation*." *Id.* (noting that certain construction developments occurred close in time to the filing of summary judgment and the case's appeal, and also that the "the project was dormant for years . . . [after] the threat of liability against the County diminished") (emphasis added).  In contrast, nothing here raises suspicion about the agency's timing.  To the contrary, at the beginning of their purportedly unlawful conduct—when the Council was charted, before this litigation began—Defendants indicated *precisely* when the Council would end.  The Council's charter stated that it would be terminated two years after it

was created, unless renewed. A.R. 23 ("The Council will terminate 2 years from the date the charter is filed, unless, prior to date, it is renewed in accordance with the provisions of section 14 of the FACA."); *see* 5 U.S.C. app. II § 14(a)(2)(A) (advisory committee authority expires after two years unless the committee is "renewed . . . by appropriate action prior to the end of such period."). In other words, Defendants did not *cause* the Council's charter to lapse after this litigation was brought so to avoid its consequences—the Council was always due to dissolve in December 2019, and the parties and the public had two years of notice about this deadline. This transparent timing belies any concern about gamesmanship or chicanery. *Cf. Mhany*, 819 F.3d at 604.

Plaintiffs also cast doubt on Defendants' good faith by arguing that certain documents were disclosed only recently. However, as Defendants rightly note, the agency only created some of these documents *after* the deadline of the filing of the administrative record. *Compare* Dkt. No. 78-1 (Council Chair Brewster's letter attaching the summary report, dated December 7, 2019), *with* Dkt. No. 67 (December 3, 2019 deadline to lodge administrative record). Nor did Defendants strategically or belatedly raise the mootness issue; they raised it in their first filing after the Council ended. Def. Br. at 1.; *see Mhany*, 819 F.3d at 604–05 ("The Supreme Court has viewed mootness claims skeptically when they are not timely raised.") (citing *City of Erie v. Pap's A.M.*, 529 U.S. 277, 288 (2000)). The Court thus concludes that Defendants have met their burden on the first prong of the voluntary-cessation inquiry. *Accord Tidwell*, 239 F. Supp. 3d at 225–27.

Next, the Court must consider whether "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Clear Channel Outdoor*, 594 F.3d at 110. This inquiry is simpler. The *only* argument Plaintiffs raise on this prong is that "the effects

of Defendants' alleged violations persist in the form of unreleased Council materials and its policy recommendations."  Pl. Reply. Br. at 3 (internal quotation marks and citation omitted). As the Court has discussed, Defendants have shown—through thousands of pages of disclosure and detailed affidavits, which are entitled to a presumption of good faith—that they have complied with FACA's disclosure requirements.  *See Duncan*, 643 F.Supp.2d at 48–49; *Perry*, 684 F.2d at 127.  Defendants have therefore met their burden on this prong as well.  *See generally Pierre-Paul v. Sessions*, 293 F. Supp. 3d 489, 493 (S.D.N.Y. 2018).

Plaintiffs do not argue that this case falls within another mootness exception, such as cases capable of repetition yet evading review.  *See Mhany*, 819 F.3d at 603.  The Court thus concludes that Defendants have met their burden in showing that no exception to mootness doctrine applies here.

### D.  Plaintiffs Cannot Escape Mootness By Seeking Injunctive and Declaratory Relief

Plaintiffs try to salvage their claims by asking this Court to issue declaratory relief. However, "if a case is moot, a request for declaratory judgment will not resuscitate the lawsuit, unless an exception to the mootness doctrine applies."  *Tidwell*, 239 F. Supp. 3d at 226–27.  The Court has already determined that no exception to mootness applies.  In this posture, courts uniformly hold that requests for declaratory relief cannot "resuscitate" otherwise moot cases.  *Id.*; *NBC-USA Hous., Inc., Twenty-Six v. Donovan*, 674 F.3d 869, 873 (D.C. Cir. 2012) ("Where an intervening event renders the underlying case moot, a declaratory judgment can no longer 'affect[] the behavior of the defendant towards the plaintiff . . . .'"); *Ass'n of Am. Physicians & Surgeons*, 879 F. Supp. At 106 ("Plaintiffs' suggestion that a declaratory judgment might be appropriate even if the working group has been terminated and all appropriate working group documents have been publicly released is also rejected. At that point, there will simply be no

continuing case or controversy for judicial resolution. Nor will there be any basis for injunctive or other equitable relief.  The case will in fact be moot, and defendants will be legally entitled to dismissal.").  Indeed, accepting Plaintiffs' argument would blow a hole in the prohibition against advisory opinions—it would allow courts, in otherwise moot cases, to opine on the merits in the course of "declaring" whether a party violated the law.  The Court rejects this view.

Similarly, the Court declines to enter a use injunction.  Because this case is moot, the Court lacks power to enter any injunctive relief, let alone this "remedy of last resort."  *Natural Resources Defense Council v. Peña*, 147 F.3d 1012, 1025 (D.C. Cir. 1998); *Cargill, Inc. v. United States*, 173 F.3d 323, 342 (5th Cir. 1999).

\* \* \* \* \*

"In our system of government, courts have 'no business' deciding legal disputes or expounding on law in the absence of such a case or controversy."  *Already, LLC*, 568 U.S. at 90 (quoting *DaimlerChrysler Corp. v. Cuno,* 547 U.S. 332, 341 (2006).  Here, Defendants have met their burden in showing that each of Plaintiffs' claims under the Federal Advisory Committee Act is moot.  Because there is no longer a case or controversy for the Court to address, this case must be dismissed.

## IV.   CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is GRANTED.  This resolves Dkt. Nos. 73 and 75.  The Clerk of Court is respectfully ordered to enter judgment and close this case.


SO ORDERED.

Dated:  September 28, 2020
        New York, New York

_____
        ALISON J. NATHAN
    United States District Judge